**Esmelinda PÉREZ, Plaintiff,**

v.

**SAINT JOHN'S SCHOOL, Defendant.**

**Civil No. 09–2170 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 30, 2011.

---

Manuel Duran–Rodriguez, Manuel Duran Law Office, San Juan, PR, for Plaintiff.

Martha L. Martinez–Rodriguez, Olga Y. Cabrera–Ramos, Linda S. Rodriguez–Gardeslen, Manuel A. Nunez Law Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

### I. PROCEDURAL HISTORY

On November 18, 2009, Esmelinda Pérez ("Plaintiff") filed suit against Saint John's School ("Defendant"), alleging that Defendant impermissibly discriminated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Puerto Rico state law (Docket No. 1).

On November 15, 2010, Defendant filed a motion for summary judgment (Docket No. 13). Therein, Defendant first argues that Plaintiff failed to even allege that she is impaired within the meaning of the ADA or to connect any of her health issues with a substantial limitation to a major life activity. Further, Defendant avers that Plaintiff failed to show that her supervisor, Annettee Hequin ("Hequin"), or Defendant's headmaster, Barry Farnham ("Farnham"), regarded Plaintiff as disabled within the meaning of the ADA. Thus, Defendant asserts that Plaintiff fails to establish a *prima facie* case or a cognizable claim under the *McDonnell Douglas* [1] burden shifting standard and, accordingly, concludes that summary judgment in its favor is appropriate as to her ADA discrimination claim. For the same reason, Defendant asserts that summary judgment should be granted as to Plaintiff's hostile work environment claim. Finally, Defendant requests the dismissal of Plaintiff's ADEA claim as there is no evidence that Plaintiff's salary, benefits and responsibilities were diminished.

---

1. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

On January 21, 2011, Plaintiff filed her opposition [2] to Defendant's motion for summary judgment (Docket Nos. 21 & 22). Therein, Plaintiff identifies the "regarded as" definition of disability as that under which she intends to proceed. Accordingly, Plaintiff cites statements made by Farnham and Hequin in support of the proposition that she was regarded as disabled inasmuch as they believed that she could not perform any work. Plaintiff also asserts that Farnham and Hequin's attitude towards Plaintiff changed dramatically after she returned from medical leave following surgery. Further, Plaintiff avers that she "perfectly perform[ed] all the duties of her job" at the time of her alleged constructive discharge and that she was reprimanded unfairly in "uncommon meetings" with Farnham and Hequin after her return from medical leave. Thus, Plaintiff argues that she was regarded as disabled, and was subjected to a hostile work environment, which, ultimately, resulted in her constructive discharge.

On February 2, 2011, Defendant filed a reply to Plaintiff's opposition to the motion for summary judgment (Docket No. 28). Therein, Defendant argues that the evidence shows that Plaintiff's employer regarded Plaintiff as capable of working, and even capable of "doing good work." Additionally, Defendant reiterates its previous argument that Plaintiff did not suffer a constructive discharge as her salary, benefits and responsibilities were not diminished.

On March 4, 2011, Plaintiff filed a sur-reply (Docket No. 32). In this filing, Plaintiff merely reiterates her argument that Farnham and Hequin made comments which indicated that they regarded Plaintiff as disabled.

On April 4, 2011, the pending motion for summary judgment was referred to Magistrate Judge López (Docket Nos. 34 & 35), who subsequently recused himself from the instant case (Docket No. 38). On May 2, 2011, Magistrate Judge Vélez–Rivé received the referral (Docket No. 39) and on July 28, 2011, she entered her *Report and Recommendation* that the Court grant the pending motion for summary judgment (Docket No. 43).

In her *Report and Recommendation,* Magistrate Judge Vélez Rivé set forth the uncontested facts in the instant case [3] and concluded that Plaintiff was not regarded as disabled by her supervisors while employed by Defendant and that she had not suffered a constructive discharge resulting from a hostile work environment. Thus, Magistrate Judge Vélez–Rivé recommended that Plaintiff's ADA cause of action be dismissed. Further, noting that Plaintiff has abandoned her ADEA claim, the Magistrate Judge recommended dismissal of the same.[4] Finally, Magistrate

---

**2.** The Court notes that Plaintiff's opposition to the motion for summary judgment, as well as her objections to the Magistrate Judge's Report and Recommendation, are replete with spelling, grammatical and syntactical errors which rendered difficult the Court's task of extrapolating Plaintiff's arguments from the filings. For example, despite the Court's most ardent efforts, it cannot fully glean the meaning of the following sentence, "a case c jye intnata (sic) addition to the failure to provide reasonable accommodation, Defendant has also discriminated and retaliated against

Plaintiff in the classic way" (Docket No. 22, p. 6).

**3.** The Magistrate Judge set forth not only the pertinent uncontested facts, but, presumably acting from an abundance of caution, also included several facts which were unsupported by the record, indicating the lack of support in footnotes.

**4.** It appears from the filings which the Magistrate Judge relied upon to render her *Report and Recommendation* that Plaintiff has indeed abandoned her ADEA claim. Further, Plain-

Judge Vélez–Rivé recommended that the court decline to exercise its discretionary jurisdiction over supplemental state law claims.

On August 4, 2011, Plaintiff filed her objections to the Magistrate Judge's *Report and Recommendation* (Docket No. 45). Therein, Plaintiff primarily rehashes her previous argument that remarks made by Farnham and Hequin establish that she was regarded as disabled within the meaning of the ADA. Plaintiff also contests the Magistrate Judge's failure to include certain allegedly uncontested facts.[5] Further, Plaintiff cites to an unspecified cut in benefits after she returned to work from medical leave, a change in Hequin's attitude towards Plaintiff and repeated meetings between Hequin, Farnham and Plaintiff as evidence of a constructive discharge and hostile work environment. Thus, Plaintiff asserts that the Magistrate Judge erred in recommending the dismissal of her ADA claim.

On August 12, 2011, Defendant filed an opposition to Plaintiff's objections (Docket No. 50). Defendant notes that Plaintiff has still failed to show that she was perceived as disabled as she does not specify any disabling condition nor any major life activity which Defendant perceived her as being incapable of completing. Additionally, Defendant argues that, while Plaintiff now asserts that she received a cut in benefits, there is no such evidence on the record before the Court. Thus, Defendant requests that the Court adopt the *Report*

*and Recommendation* and dismiss the instant case.

## II. MAGISTRATE'S REPORT AND RECOMMENDATION

■ The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* FED.R.CIV.P. 72(b); *see also* D.P.R. Civ. R. 72(a); *see also Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. FED. R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "fail-

---

tiff did not object to the Magistrate Judge's recommendation that this claim be dismissed. Thus, the Court **GRANTS** the motion for summary judgment as to this claim (Docket No. 13) and **DISMISSES WITH PREJUDICE** the same.

**5.** Many of these facts were not included in the record before the Magistrate Judge. The Court shall not consider such previously unpresented facts as they are inexcusably tardy

in their presentation to the Court. *See See Entact Services, LLC v. Rimco, Inc.*, 526 F.Supp.2d 213, 223 (D.P.R.2007) (citing *Rosario Rivera v. Puerto Rico Aqueduct & Sewers Auth.*, 331 F.3d 183, 193 (1st Cir.2003)) ("[N]ew arguments, or new known evidence, are to be excluded as reconsideration arguments originally available ... at the time of the submission to the Magistrate Judge.")

ure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992); *see also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993)(stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Borden v. Sec. of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987)(holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996) (*en banc*) (extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982)(en banc)(appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001)(finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV. P. 72(b)); *Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990)(finding that "when no objections are filed, the

district court need only review the record for plain error").

In the instant case, Plaintiff objects both to the Magistrate Judge's recitation of the facts and to her application of fact to the applicable ADA jurisprudence. Therefore, the Court reviews both the uncontested facts and the legal analysis of Plaintiff's ADA claims *de novo.* Upon such a review, the Court **ADOPTS** the Magistrate Judge's *Report and Recommendation* (Docket No. 43) as outlined below and **GRANTS** Defendant's motion for summary judgment (Docket No. 13), **DISMISSING** Plaintiffs ADEA and ADA claims **WITH PREJUDICE** and Plaintiff's state law claims **WITHOUT PREJUDICE.**

### III. SUMMARY JUDGMENT

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico,* 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evi-

dence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997).

▪ At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir.2000)(finding that "determinations of motive and intent ... are questions better suited for the jury"). Conversely, summary judg-

ment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

## IV. FACTUAL BACKGROUND

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, in this case favoring Plaintiff. *See Vera v. McHugh,* 622 F.3d 17, 26 (1st Cir.2010); *see also Agusty–Reyes v. Dept. of Edu.,* 601 F.3d 45, 48 (1st Cir.2010); *Cadle Co.,* 116 F.3d at 959–60. However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera,* 622 F.3d at 26 (internal quotations and citation omitted); *see also Ayala–Gerena,* 95 F.3d at 95. Further, the Court will not consider hearsay statements nor allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. Civ. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.")

Accordingly, all statements of fact herein are drawn solely from the properly-

supported statements of proposed fact proffered in conjunction with Defendant's motion for summary judgment, Plaintiff's opposition thereto and Defendant's reply.

■ As an initial matter, the Court notes that Plaintiff has improperly denied a substantial number of Defendant's proposed uncontested facts which were properly supported by the record. Rather than pointing to record evidence which controverts these uncontested facts, Plaintiff merely restates Defendant's proposed facts in different language. *See* D.P.R. Civ. R. 56(c)(mandating that all denials of proposed facts must be properly supported by record citations). Thus, the Court shall deem these facts admitted and present them below in the manner that represents an accurate, record-supported depiction of the underlying evidence. Further, Plaintiff denied many proposed facts on relevancy grounds which are relevant and even integral to both this Court's inquiry and to the Magistrate Judge's inquiry before. Thus, the Court deems these facts admitted as well. Additionally, several of Plaintiff's qualifications of Defendant's

proposed facts are wholly unsupported by the record or are based upon Plaintiff's unqualified assertions and inferences [6] and thus represent impermissible bald assertions and rank conjecture. *See Vera,* 622 F.3d at 26. Accordingly, these proposed statements of fact shall not be included in the Court's recitation below.

On June 27, 1990, Defendant hired Plaintiff to fill the position of Secretary of Admissions Office and Development, which was previously vacant. At the time when she was hired, Plaintiff received a written job description, which she discussed with her supervisor at that time, Evangeline Segarra ("Segarra"). While employed by Defendant, Plaintiff had four supervisors: Segarra, Margarita Gónzalez ("Gónzalez"), Yvette Bailey (Bailey) and Hequin. Hequin was Plaintiff's supervisor from 2006 through 2008. Plaintiff's supervisors evaluated her yearly. In 1994, 1997, 1999 and 2000, Plaintiff's written evaluations noted that she was prone to procrastination and in 1992 and 1993, they noted that she did not take criticism well.

6. The Court particularly notes that Plaintiff's assertion in her opposing statement of facts that she requested the names of persons who complained about her, as well as the dates of the complaints, in order to "trap [Hequin and Farnham] in their lies and contradictions" is wholly unsupported by Plaintiff's deposition testimony, as is Plaintiff's assertion that she never "[did] anything wrong." Additionally, Plaintiff's assertion that Farnham repeated his question as to why Plaintiff did not "go on disability" in the second meeting is unsupported by the declaration under penalty of perjury to which Plaintiff cites in her opposing statement of material facts. Further, the short declaration itself, created after Plaintiff's deposition and the filing of Defendant's motion for summary judgment contains Plaintiff's impermissible and unsupported conclusion that "Farnham and Hequin had agreed to force me to resign and/or to discharge me because they thought I could not work" and an unsupported statement that no other em-

ployee who owed the school money received a collection letter. *See* Fed.R.Civ.P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *see also Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993)(noting that, in order to create a factual dispute, Plaintiff must point to evidence which "herald[s] the existence of definite, competent evidence" rather than relying on "[o]ptimistic conjecture, unbridled speculation, or hopeful surmise"). Thus, the Court does not accept these assertions as facts herein. Additionally, Plaintiff's insistence that she always performed her duties properly is not included in the Court's recitation of the facts as "[a]n employee's perception of [herself] is not relevant" to the Court's inquiry. *See Torrech–Hernández v. General Electric Co.,* 519 F.3d 41, 49 (1st Cir.2008).

During Plaintiff's employment with Defendant, Defendant offered its employees a "remission" which consisted of a 50%, 75% or 100% discount on their children's tuition. At some point during Plaintiff's employment, the remission was discontinued. However, after Plaintiff and other employees protested the discontinuation, the remission was reinstated.

At some point between 2003 and 2005, while Gónzalez was Plaintiff's supervisor, Plaintiff began to feel pain that prevented her from walking when she got up from her desk. Plaintiff left work and crossed the street to Ashford Hospital, where she was diagnosed with two tumors in her uterus. The physician who diagnosed the tumors informed Plaintiff that the tumors required surgery. However, Plaintiff received a second opinion from a physician who attributed Plaintiff's pain to her premenstrual state, prescribed pain killers and told Plaintiff not to seek surgery unless the tumors became a "bigger problem [so she] cannot perform." Plaintiff testified that, from this time forward, she experienced profuse bleeding when menstruating and pain in her back and leg. She further testified that in order to "perform" she took two Tylenols and continued with her work.

In May of 2008, when she took her sons to be vaccinated at a hospital, she began to bleed profusely. At that time, the nurses took her to the bathroom and brought her Depends. They offered to send Plaintiff to the emergency room, but Plaintiff declined the offer as she had an appointment with her physician the following day. Plaintiff testified that the next day her physician scheduled a procedure ("a raspe") [7] to resolve the bleeding issue. The procedure occurred on either May 15 or 16, 2008. However, on the day of Plaintiff's son's senior prom, the bleeding returned. Plaintiff did not call her physician, but, rather "stacked up on [sanitary napkins]" and attended the prom. The next day, Plaintiff went to see her physician and agreed to undergo surgery if it would fix her pain and bleeding.

Plaintiff called Hequin, who was her supervisor at the time, and told her that she needed to be hospitalized to have the surgery and that she wanted to "get [it] over with." Plaintiff testified that Hequin responded,[8] asking about Plaintiff's plan for leaving the office. Plaintiff said that she would "try to pass by and leave everything ready" but was unable to do so because she was hospitalized that night. Plaintiff testified that this was her last conversation with Hequin prior to her surgery and that she thought that Hequin "didn't sound too happy" at the time. On June 20, 2008, Plaintiff underwent the surgery. Hequin

---

**7.** Although the nature of this procedure is not further described on the record, the Court takes judicial notice that this procedure is known in English as a dilation and curettage (D & C) or uterine scraping procedure. *See e.g. Pueblo v. Pérez Bernard,* 99 P.R.R. 834, 837–38 (1971) (English translation completed by court translators and available with the District of Puerto Rico law library) (discussing the "raspe" procedure). During this procedure, a physician removes tissue from the inside of the patient's uterus. *Dilation and Curettage (D & C),* http:www.mayoclinic.com/health/dilation-and-curettage/MY00345. The procedure is used to diagnose or treat several uterine conditions, including heavy bleeding.

*Id.* The Court thus takes notice of this description of the procedure obtained from a reputable internet source as an aid to its inquiry. *See Chhetry v. U.S. Dept. of Justice,* 490 F.3d 196, 199–200 (2d Cir.2007)(finding no error where the Board of Immigration Appeals took administrative notice of news articles from an online source).

**8.** The testimony only provides Hequin's response as quoted by Plaintiff in Spanish without English translation. Accordingly, the Court may not include it herein. *See* D.P.R. Civ. R. 5(g).

was scheduled to leave for Miami that day, but, while Plaintiff was in recovery, Hequin called. Plaintiff's husband informed Hequin that Plaintiff was in recovery. Hequin told Plaintiff's husband that she would call back later, but never did so.

Ultimately, Plaintiff was on medical leave from June of 2008 until September 2, 2008, when she returned to work. While Plaintiff was on medical leave, the Admissions Office had moved from one building to another.[9] The move was planned prior to the time when Plaintiff left to undergo surgery. Plaintiff told Luis Fernández, who was in charge of maintenance, to pack her things in boxes and he assured her that he would pack and complete the move for her. Plaintiff complained that, once she returned from surgery, "everything was in boxes and [her] office wasn't in optimal conditions, everything was a mess."

Further, while on medical leave, Plaintiff received a letter from Farnham regarding an outstanding debt of $6,000 which she owed to Defendant. Plaintiff responded in writing stating that she felt offended, that Farnham had implied that she wasn't an "honorable person" and that Farnham should have waited until she returned from medical leave to address the issue. Farnham wrote back, stating that it was not his intention to offend Plaintiff.

Plaintiff characterizes Hequin's disposition when she was hired as Admissions Office Director as "very friendly" and stated that Hequin "got along [with Plaintiff] fantastically fine." However, Plaintiff tes-tified that Hequin's attitude changed sometime within one month of when Plaintiff left work to undergo surgery in June of 2008 or just after she returned.[10] Plaintiff also testified that, once she returned from surgery, she felt that Hequin acted distant and cold. Plaintiff further took umbrage to Hequin's failure to ask how she was feeling once she returned from medical leave. After Plaintiff returned to work, Hequin began to send all communication via email or voice mail, although all prior communication was conducted verbally and face-to-face.[11] Plaintiff also complained that Hequin failed one day to answer Plaintiff's phone calls while eating lunch in a gazebo and that Hequin failed to inform Plaintiff of a ribbon-cutting ceremony prior to the date on which it took place. Additionally, Plaintiff stated that, following her return, Hequin began to lock her door, which was previously unlocked.

Additionally, in 1993, Plaintiff had a car accident which affected her "cervical", causing intermittent back pain at times once she has been sitting for prolonged periods. While Gónzalez was Plaintiff's supervisor, she noticed that Plaintiff had back pain and recommended that Plaintiff ask Defendant to purchase an ergonomic chair for her. Defendant did so, purchasing the model which Plaintiff requested. Subsequently, when the office was remodeled, Hequin gave Plaintiff a catalog to order a new ergonomic chair. Plaintiff selected a chair and it arrived one week later. However, when Plaintiff returned

9. The office had already moved once previously during Plaintiff's employment while she was supervised by Bailey.

10. Plaintiff testified both that the change in attitude occurred once she returned from medical leave in September of 2008 and that it occurred either one month before the surgery or just after she returned. The Court has adopted the more expansive timeline out of an abundance of caution.

11. The Court notes, however, that on October 11, 2007, Hequin wrote a memo to Plaintiff regarding her absence from her post between 10:45 and 1:15 the previous day although she was only allotted half an hour for lunch so that she could leave early each day.

from medical leave, after the move to the new office space occurred, the chair was missing.[12] Plaintiff asked Férnandez to locate the chair for her, but their efforts were unsuccessful. By the end of September, Plaintiff requested that the bookstore person buy her a chair, but he stated that he did not have the time and suggested that Plaintiff visit the store to pick out the chair. Plaintiff did so and Defendant purchased the chair for Plaintiff by October of 2008. Plaintiff also had an ergonomic keyboard for a long period of time which was replaced with a normal keyboard while she was at medical leave because the ergonomic keyboard was not compatible with a new computer system which was installed after the move. Plaintiff did not thereafter request another ergonomic keyboard.

On September 2, 2008, Farnham emailed Plaintiff telling her that he wanted to meet with her and Hequin. Plaintiff asked Hequin what the meeting was in reference to and Hequin informed her that it related to Plaintiff's job description. The meeting occurred on September 3, 2008. At that time, Plaintiff was handed a job description.[13] Further, Hequin and Farnham informed Plaintiff that they had received complaints from parents and from members of the Board about her performance and the way she greeted people. Hequin lauded the performance of Gloria Colina ("Colina"), who had completed mailings in Plaintiff's absence, nothing that Colina did the mailings in a more expeditious manner than Plaintiff and that Hequin "never knew what a good secretary was until Colina came along." Plaintiff rebutted this statement by informing Hequin that "when

there is no school in session it's easy to do a mailing because . . . you don't have any other work to do but the mailing." Plaintiff testified that she was surprised by the complaints because they had not been brought to her attention by a supervisor previously. Plaintiff requested that Hequin and Farnham provide her with the names of the complainants and the dates of the complaints because "maybe [she] did offend somebody or did not greet somebody properly and [she would] call the person and excuse herself." However, Hequin and Farnham did not provide this information. During the meeting, Plaintiff began to cry and Farnham told her "[i]f you cannot talk right now, I will understand. If you want to set another date for another meeting, we will do so." Plaintiff accepted the offer and left. Plaintiff described Hequin's attitude at the meeting as hostile and her tone of voice as "antagonistic" and further testified that she felt as if Hequin and Farnham "gang[ed] up on [her]."

Plaintiff subsequently wrote to Farnham to request a second meeting, which was held on either September 4 or 5, 2008. During this meeting, Plaintiff stated that she was surprised by the complaints, that her supervisor had not mentioned them before and that Colina had failed to perform all of Plaintiff's work in her absence. During this meeting, Farnham told Plaintiff that he was aware that she had applied for the extended day program and that he believed it unwise to place Plaintiff in this program given her situation. Farnham further stated that Hequin had approached

---

12. On September 4, 2008, Plaintiff approached Hequin in her office and asked her about the chair. Hequin answered that Plaintiff was not there during the move and that she would not speak further with Plaintiff without Farnham present.

13. Plaintiff noted that her job description remained essentially the same, but formally included several duties which she already performed previously but had no longer performed, including the composition of the directory, for which she had previously received a $600–700 stipend.

him to tell him about the goings-on in the Admission Office. Farnham also asked Plaintiff why her son was on school premises when he was no longer a student there.[14] Plaintiff responded that other employees' children came onto school premises and Farnham relied that he was unaware of that situation.[15]

In total, once Plaintiff returned from medical leave in September of 2008, she had five meetings with Farnham and Hequin prior to leaving her position in October of 2008. During one meeting, Farnham asked Plaintiff if she needed to leave early to attend to her son. Plaintiff considered this a "trap" enticing her to show that she could not complete a work day and declined the offer, opting instead to allow her son to wait for her on school premises.

At another meeting, Farnham and Hequin brought to Plaintiff's attention a complaint received from a prospective student's parent, who stated that Plaintiff dissuaded her from enrolling her child and suggested that she enroll in another school. Plaintiff testified that, during the meeting, Farnham agreed with her that this parent might have only been looking for a discount.

During the meetings, Hequin also brought to Plaintiff's attention that parents and teachers had been complaining that Plaintiff failed to pick up the phone when they called and that Plaintiff greeted them improperly. Plaintiff requested the names of those who complained about her greeting.

During one of the meetings, Hequin told Plaintiff that, while she was absent on medical leave, the mailings were completed "fantastically" and that she did not understand why Plaintiff took so much time to complete mailings. Hequin further stated that she was no longer going to allow help for Plaintiff to complete the mailings. Plaintiff stated that she had help in completing the mailings from students during their free periods, as well as maintenance workers. Plaintiff testified that she told Farnham and Hequin that she needed help with the mailings as her back and right arm hurt. Plaintiff testified that Farnham replied to this statement by "very ironically" asking whether Plaintiff should go on disability as a result. Hequin responded as well [16] and Plaintiff testified that her answer to Hequin was, "I'm not saying I can't work which I've done for so many years, but I'm asking for the mailings at least, I need help." [17] Plaintiff testified that she believes that Hequin took away

14. Plaintiff's son had been expelled for poor academic performance in May of 2008.

15. Defendant proffers that Plaintiff had no personal knowledge of whether other employees were also told that other children could not be on school premises. Although Plaintiff objects to this proffer, the Court finds that, based upon the record before it, there is no indication that Plaintiff had personal knowledge of whether Farnham was previously aware that other employees' children were on school grounds and that her belief that he knew is anything other than speculation.

16. Plaintiff's deposition testimony only provides the Spanish response provided by He-

quin and no translation was ever provided to the Court. Thus, the Court cannot consider the substance of the statement made by Hequin pursuant to Local Rule 5(g), which forbids the Court from relying upon any untranslated Spanish language materials in rendering decisions.

17. As Farnham's and Hequin's response provide the fulcrum around which Plaintiff's ADA claim revolves as it forms the basis for her "impression" that Farnham "felt" that Plaintiff could not perform her work, Plaintiff understandably fiercely contested this statement of fact. However, a review of Plaintiff's own deposition shows that this is an accurate description of the testimony which she gave.

her help completing the mailings out of spite because there was work to complete while Plaintiff was on medical leave which Hequin could not complete.[18]

During one meeting, Plaintiff asked Farnham what the meeting was about and he answered "I just want to know how things are going in the Admissions Office, how is your relationship?" Plaintiff testified that she answered that it was "basically the same" and Farnham informed her that "if things don't get better, you're going to have a very tough year."

At the end of one meeting, Plaintiff testified that Farnham informed her that he "was trying to find a place . . . where they could take advantage of her skills" but that he did not attempt to place her in a secretarial position open in the middle school as Plaintiff indicated that she was not interested in the position.

As a result of the foregoing events, Plaintiff concluded that Farnham and Hequin discriminated against her.

Neither Plaintiff nor Defendant have included in their statements of proposed fact the nature or exact timing of Plaintiff's decision to leave her employment with Defendant. Although Plaintiff refers in filings to her separation as occurring in November of 2008, no corresponding fact underlining this assertion appears in her statement of proposed material facts, the opposing statement of proposed material facts or the reply statement.[19]

## V. AMERICANS WITH DISABILITIES ACT

Under the Americans with Disabilities Act, employers are generally prohibited from discriminating against qualified persons with disabilities in the workplace. *See* 42 U.S.C. § 12112(a). Specifically, the statute provides that employers shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees and other terms, conditions, and privileges of employment." *Id.*

█ In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must prove three elements by a preponderance of the evidence. *Mulloy v. Acushnet Co.*, 460 F.3d 141, 145–46 (1st Cir.2006). First, "that she is **disabled within the meaning of the ADA.**" *Id.* (emphasis ours). Second, "that with or without reasonable accommodation she was a qualified individual able to perform the essential functions of the job." *Id.* Third, that the employer discharged her or that she was otherwise adversely affected because of her disability. *Thornton v.*

---

18. As an example of this, Plaintiff states Hequin requested that Plaintiff train her in the operation of the Blackboaud (sic) computer system while she was on medical leave.

19. Indeed, the first mention of this "fact" is in Plaintiff's objections to the Magistrate Judge's *Report and Recommendation*, where Plaintiff provides a long list of facts, many of which were never presented previously, as facts "uncontested by Defendant" which the Magistrate Judge never considered. As the evidence which allegedly underlies these new "facts" was not cited in the previous statements of fact, the Magistrate Judge was under no obligation to consider them. *See* FED. R.CIV.P. 56(c)(formally incorporating the anti-ferreting rule already applied by the First Circuit to cases in this District under D.P.R. Civ.R. into the Federal Rules of Civil Procedure). Further, as these proposed facts were presented for the first time in Plaintiff's objections to the *Report and Recommendation*, the Court shall not consider them at this time. *See Entact Services, LLC*, 526 F.Supp.2d at 223 ("[N]ew arguments, or new known evidence, are to be excluded as reconsideration arguments originally available . . . at the time of the submission to the Magistrate Judge.")

*United Parcel Svs., Inc.*, 587 F.3d 27, 34 (1st Cir.2009).

■ When opposing a properly supported motion for summary judgment, a plaintiff bears the burden of establishing each of the elements of the ADA prima facie case of discrimination, including the existence of disability. *See Bailey*, 306 F.3d at 1166.

On June 11, 2010, the Court ordered Plaintiff to determine whether she intended to proceed with her ADA discrimination claim under a *prima facie* or *McDonnell Douglas* burden-shifting standard. In her opposition to the motion for summary judgment, Plaintiff solely argues under the *prima facie* standard as to her ADA discrimination claim.[20] Thus, the Court shall analyze the facts before it under this standard alone.[21]

## A. DISABILITY UNDER THE ADA

The first prong of the Court's inquiry under the *prima facie* standard is whether the plaintiff has a disability within the meaning attributed by the ADA. *See Mulloy*, 460 F.3d at 145. The statutory meaning of "disability" under the ADA is "(1) a physical or mental impairment that substantially limits one or more of a person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment." *Sanchez–Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 214 (1st Cir.2008).

■ The actual "existence of a disability [must] be determined in . . . a case-by-case manner" for the purposes of fulfilling the requirements of the first definition of "disability" under the ADA. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).[22] Accordingly, "[w]hether a person has a disability under the ADA is an individualized inquiry." *Bailey v. Georgia–Pacific Corp.*, 306 F.3d 1162, 1167 (1st Cir.2002) (internal quotations omitted). The Supreme Court has established that having an impairment is, in itself, insufficient to warrant protection under the ADA. *Toyota*, 534 U.S. at 198, 122 S.Ct. 681. A plaintiff must also show that the impairment has a substantial effect on a major life activity. *Id.* Accordingly, evi-

20. The Court is perplexed that Plaintiff has opted to proceed under this more rigorous and disfavored standard as Defendant did not involuntarily terminate her employment and as Plaintiff also argues a hostile work environment and constructive discharge. However, the Court's analysis of Plaintiff's discrimination claim shall be under the *prima facie* standard. After all, a plaintiff is the master of his own case. *See e.g. The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913) (stating in the context of jurisdiction that "[o]f course, the party who brings suit is master to decide what law he will rely upon")(Holmes, J.).

21. As set forth below, because Plaintiff has failed to show that she is disabled within the meaning of the statute, her claim would fail equally under the *McDonnell Douglas* burden-shifting standard as under the *prima facie* standard. *See Jacques v. Clean–Up Group,*

*Inc.*, 96 F.3d 506, 511 (1st Cir.1996)(applying to an ADA claim the *McDonnell Douglas* burden-shifting standard, whose first element mandates that the plaintiff be disabled within the meaning of the ADA).

22. The Court is cognizant that *Toyota* was legislatively recalled by the 2008 ADA Amendments Act, which altered the definition of "disability" under the ADA. Publ. No. 110–325, 122 Stat. 3553 (2008). However, this amendment became effective on January 1, 2009, after the facts of the instant case occurred. As the amendment does not apply retroactively, the Court's inquiry proceeds under the previous incarnation of the Act. *See Riley v. Potter*, No. 08–5167, 2011 WL 3841530, at *5 n. 3 (D.N.J. Aug. 25, 2011); *Etheridge v. FedChoice Federal Credit Union*, 789 F.Supp.2d 27, 35 n. 10 (D.D.C.2011); *Ramos–Echevarría v. Pichis, Inc.*, 698 F.Supp.2d 262, 267 n. 2 (D.P.R.2010).

dence of an impairment which is supported only with a medical diagnosis or conclusory assertions of disability by a physician are insufficient to show disability for the purposes of the ADA. *See id.; Whitlock v. Mac–Gray, Inc.,* 345 F.3d 44, 46 (1st Cir.2003)(citing *Toyota,* 534 U.S. at 198, 122 S.Ct. 681). Rather, a plaintiff must submit "evidence that the extent of the limitation caused by [her] impairment in terms of [her] own experience is substantial." *Toyota,* 534 U.S. at 198, 122 S.Ct. 681. "A substantial limitation cannot include any impairment which interferes in only a minor way with the performance of manual tasks, and the phrase major life activities refers only to those activities which are of central importance to daily life." *Benoit v. Tech. Mfg. Corp.,* 331 F.3d 166, 176 (1st Cir.2003).

■ Although working may be considered a major life activity, in order to be considered disabled, plaintiff must show that she is "precluded from more than the performance of a particular job." *Guzman–Rosario v. United Parcel Service, Inc.,* 397 F.3d 6, 11 (1st Cir.2005). Rather, plaintiff must make the "weighty showing" that she "is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Bailey,* 306 F.3d at 1168 (quoting 29 C.F.R. § 1630.2(j)(3)(i))(internal quotation omitted).

■ The Supreme Court has stated that there are two ways in which a plaintiff may fulfill the statutory requirement for being "regarded as" having an impairment where he can not fulfill the requirements of either the first or the second definitions of "disability." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Either "(1) a covered entity mistakenly believes that a

person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Id.*

■ In the instant case, Plaintiff proceeds under a "regarded as disabled" theory. However, in the filings presently before the Court, Plaintiff has failed to precisely identify the disability which Hequin and Farnham perceived her as having. However, an independent review of the facts presented to the Court in conjunction with the pending motion for summary judgment shows that Plaintiff suffered from a "cervical condition", which caused intermittent back pain, impeding Plaintiff's performance in mailings and necessitating the use of an ergonomic chair. Plaintiff also suffered from uterine tumors which caused her discomfort and bleeding and led to surgery and a medical leave of absence spanning nearly four months. Thus, the Court assumes that Plaintiff means to assert that Hequin and Farnham perceived her as disabled due to one of these conditions. The Court's inquiry does not end here, however, as a "plaintiff claiming that [s]he is regarded as disabled cannot merely show that [her] employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." *Bailey,* 306 F.3d at 1169.

In the instant case, Plaintiff has also failed to conclusively identify the major life activity which Hequin and Farnham believed was substantially limited by her perceived impairment. However, Plaintiff's dogged reliance on Hequin and Farnham's statements during a meeting in the fall of 2008 regarding her ability to work leads the Court to believe that she intends to

argue that the ability to work was the major life activity affected.

Plaintiff's sole arguments relating to Hequin and Farnham's belief that she was substantially limited in her ability to work stem from two statements made during a meeting held during the fall of 2008. According to Plaintiff's testimony, both statements were made in response to Plaintiff's protests that she required assistance completing mailings because her back and right arm hurt. The first statement was made by Farnham. In her deposition, Plaintiff testified that, once she protested Hequin's decision not to permit Plaintiff to request assistance with mailings, "Dr. Farnham *very ironically* told [her], 'Why don't you go on disability.'" (Docket No. 13–1, Plaintiff's Depo. p. 134, lines 5–6)(emphasis ours). Plaintiff argues that this single statement conclusively exhibits that Farnham and Hequin regarded Plaintiff as disabled. However, Plaintiff's argument misses a crucial point: by Plaintiff's own admission the statement was made ironically.[23] *See also* Plaintiff's Deposition, Docket No. 13–1, p. 134, lines 5–6. Thus, this comment, made in mocking jest, cannot form the backbone of Plaintiff's claim that she was regarded as disabled and unable to perform any work. Accordingly, Plaintiff's only remaining contention that she was regarded as disabled in such a manner that she was unable to perform any work is that Hequin's comment, given immediately after Farnham's comment discussed above, shows that Hequin believed that she was incapable of performing work and, thus, was regarded as disabled under the ADA. However, the Court is barred from considering the substance of this comment as Plaintiff has provided no English translation. *See* D.P.R. Civ. R. 5(g). Even if the Court were to consider this single comment, however, the Court would not find that this mere scintilla of evidence is sufficient standing alone to bear Plaintiff's heavy burden of showing that her supervisors regarded her as disabled in a manner that precluded her from performing an entire class of jobs or a broad range of jobs in varying classes. Reviewing the testimony as to the entire meeting during which the two comments were made, the Court finds no indication that Hequin and Farnham believed that Plaintiff was so disabled as to render her substantially limited in the major life activity of working. At most, taken in context, the deposition testimony shows that Hequin and Farnham doubted Plaintiff's ability to perform a single task—that of completing mailings. Such a showing is insufficient to fulfill the first prong of the *prima facie* standard for discrimination under the ADA. Accordingly, the Court agrees with Magistrate Judge Vélez–Rivé's determination that Plaintiff's claim of discrimination under the ADA must fail as Plaintiff failed to show that she is disabled within the meaning of the statute. Further, Plaintiff has presented the Court with no evidence that she was separated from her employment or was constructively discharged[24] to support her contentions under the third element of the *prima facie* standard. Thus, Plaintiff's claim of discrimination based on disability fails equally upon the third element as upon the first. Accordingly, Defendant's motion for summary judgment (Docket No. 13) is **GRANTED** as to Plaintiff's claim of discrimination under the ADA and

---

**23.** The Oxford English Dictionary defines irony as "a figure of speech in which the intended meaning is the opposite of that expressed by the words used; usually taking the form of sarcasm or ridicule."

**24.** *See* the Court's discussion *infra.*

this claim is **DISMISSED WITH PREJU-DICE.**

## B. HOSTILE WORK ENVIRON-MENT AND CONSTRUC-TIVE DISCHARGE

Plaintiff also asserts that she was subject to a hostile work environment resulting from her disability which culminated in her constructive discharge.[25] As an initial matter, the Court notes that, as Plaintiff is not disabled within the meaning attributed by the statute, this claim must also fail. Further, even assuming *in arguendo* that Plaintiff was regarded as disabled, the Court agrees with the Magistrate Judge's conclusion that Plaintiff did not suffer from a hostile working environment that resulted in a constructive discharge.

 In order to sustain a claim of a hostile work environment, the plaintiff "must show that the harassment she complains of was 'so severe or pervasive that it alters the conditions of the plaintiff's employment.'" *Feliciano–Hill v. Principi,* 439 F.3d 18, 26 (1st Cir.2006)(quoting *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 26 (1st Cir.2002)). Likewise, to establish that she suffered a constructive discharge, "plaintiff must show 'that her working conditions were so difficult or unpleasant that a reasonable person in her shoes would have felt compelled to resign.'" *Id.* at 27 (quoting *Marrero,* 304 F.3d at 26); *see also Landrau–Romero v. Banco Popular De Puerto Rico,* 212 F.3d 607, 613 (1st Cir.2000)(noting that, in constructive discharge cases, "the plaintiff must prove that his employer imposed working conditions so intolerable that a reasonable person would feel compelled to

forsake his job rather than to submit to looming indignities").

 As an initial matter, Plaintiff's perceptions of meetings with Hequin and Farnham and other interactions with Hequin as cold, antagonistic or hostile, which are unsupported by objective facts, do not support a finding that she suffered from a hostile working environment that resulted in a constructive discharge as her subjective impressions of her working conditions do not govern. *See Feliciano–Hill,* 439 F.3d at 26–27 (standing for the proposition that subjective beliefs, no matter how sincerely held, are insufficient to support a plaintiff's assertion that he/she was constructively discharged due to a hostile working environment); *see also Carmona–Rivera v. Puerto Rico,* 464 F.3d 14, 19 (1st Cir.2006).

Thus, the only remaining facts which Plaintiff points to in order to support her hostile work environment and constructive discharge theory are: that Hequin began communicating with her via email or voice mail after she returned from medical leave; that Hequin closed her door after Plaintiff's return; that Hequin failed to answer Plaintiff's calls on one occasion during lunch; that Hequin failed to notify Plaintiff of a ribbon-cutting ceremony; that Hequin failed to inquire as to Plaintiff's health when she returned from medical leave and sounded annoyed when Plaintiff informed her of the need for surgery; and that Farnham sent a letter to Plaintiff while she was on medical leave regarding money which she indeed owed to Defendant. None of this behavior rises to the level of objectively offensive or hostile behavior as determined by a reasonable person and, accordingly, does not support

---

**25.** The Court notes again that Plaintiff has failed to present the Court with any facts surrounding the separation from her employment which underlies her constructive discharge claim. Nonetheless, acting out of an abundance of caution, the Court includes the constructive discharge analysis along with the hostile work environment analysis herein.

Plaintiff's contention that she suffered from a hostile work environment. *See e.g. Rios–Jimenez v. Principi*, 520 F.3d 31, 44 (1st Cir.2008)("[T]he federal employment laws do not establish a general civility code for the workplace.") Further, Plaintiff utterly neglected to causally connect the complained-of behavior to her disability or to set forth facts relating to the circumstances surrounding her voluntary termination from employment with Defendant. Thus, the Court finds that the Magistrate Judge correctly determined that Plaintiff's claim of a hostile work environment which led to her constructive discharge must fail. Accordingly, the Court **ADOPTS** the Magistrate Judge's *Report and Recommendation* (Docket No. 43) regarding Plaintiff's hostile work environment and constructive discharge claim, **GRANTING** defendant's motion for summary judgment (Docket No. 13) as to this claim and **DISMISSING** it **WITH PREJUDICE** accordingly.

## VI. SUPPLEMENTAL STATE LAW CLAIMS

Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' Puerto Rico law claims. "[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" *Figueroa v. Alejandro*, 597 F.3d 423, 431 n. 10 (1st Cir.2010)(quoting 28 U.S.C. § 1367(c)(3)). *See Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1176 (1st Cir.1995)(finding that dismissal of supplemental state actions without prejudice is appropriate where there is an "unfavorable disposition of a plaintiff's federal claims" before trial). Although "[i]n an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims," the usual case will point toward declining to exercise jurisdiction over the remaining state-law claims when the Court balances the factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity. *Id.* at 1176; *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

Thus, the Court **ADOPTS** the Magistrate Judge's *Report and Recommendation* (Docket No. 43) as to the state law claims as well, **DISMISSING** them **WITHOUT PREJUDICE.**

## VII. CONCLUSION

For the reasons set forth above, the Court hereby ADOPTS, as supplemented herein, the Magistrate Judge's *Report and Recommendation* (Docket No. 43) and **GRANTS** Defendant's motion for summary judgment (Docket No. 13), **DISMISSING** Plaintiff's claims under ADEA and the ADA **WITH PREJUDICE** and dismissing the state law claims **WITHOUT PREJUDICE.** Judgement shall be entered accordingly.

IT IS SO ORDERED.