Higinia COSME–PEREZ, et al., Plaintiffs,

v.

**MUNICIPALITY OF JUANA DIAZ, Ramon A. Hernandez–Torres, Mrs. Hernandez–Torres, and their Conjugal Partnership; Commonwealth of Puerto Rico; John Doe; Richard Doe; and Their Respective Insurance Companies, Defendants.**

Civil No. 07–1942 (DRD).

United States District Court, D. Puerto Rico.

Signed June 26, 2015.

Juan Ramon Rodriguez–Lopez, Rodriguez Lopez Law Office, Ponce, PR, for Plaintiff.

Carmen Edith Torres–Rodriguez, M.L. & R.E. Law Firm, San Juan, PR, Johanna M. Emmanuelli–Huertas, Pedro E. Ortiz Alvarez, Law Office, Ponce, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court are: (a) *Defendants' Motion for Summary Judgment and Memorandum in Support*, Docket No. 50, (b) *Defendants' Supplemental Memorandum in Support of Motion for Summary Judgment*, Docket No. 100, (c) *Plaintiffs' Opposition to the Motion for Summary Judgment and Memorandum in Support*, Docket No. 73, and *Plaintiffs' Opposition to the Supplemental Memo-* *randum in Support of Motion for Summary Judgment*, Docket No.101; (d) *Plaintiffs' Reply to Statement of Uncontested Facts and Additional Uncontested Facts*, Docket 74, and (e) *Defendants' Position Regarding Additional Uncontested Facts*, Docket 85. For the reasons set forth below, the defendants' motion for summary judgment is **GRANTED**.

### Factual and Procedural Background

Plaintiff Higinia Cosme–Pérez ("Cosme") was sixty-nine years old at the time the instant complaint was filed on October 5, 2007. *Complaint*, Docket No. 1, page 3, ¶ 11. Cosme worked with the Municipality of Juan Diaz' ("Municipality") Head Start Program from September 12, 2003 through February 2007, as a full time kitchen assistant employee. Plaintiff Cosme was hired at the approximate age of 65. The contract was entered on a yearly basis from September 2003 through February 28, 2007, under the federal Head Start Program.

The Court further finds that: (a) plaintiff "Cosme began working for the Head Start Program managed by the Municipality of Juana Diaz in the year 2003;" Docket No. 50–2, ¶ 1; (b) "Cosme was a kitchen assistant;" Docket No. 50–2, ¶ 2; (c) Cosme's "last contract with the Municipality had the effective dates of March 1, 2006 to February 28, 2007," Docket No. 109–1, pages 1–9, as well as the *Addendum* at Docket No. 109–1, page 10, regarding the Head Start Contract executed by the Municipality and plaintiff Cosme for the year March 1, 2005 to February 28, 2006; (d) "on June or July 2006, Cosme underwent surgery for bone spurs" in her foot, Docket No. 50–2, ¶ 6; (e) Cosme requested sick leave in August 2006, as she was still unable to return to work, Docket No. 50–2, ¶ 7; (f) "after exhausting her medical leave, [Cosme] obtained the benefits of a disability insurance for workers, SINOT,

for the period of August 16, 2006 to December 1, 2006," Docket No. 50–2, ¶ 8; (g) on December 18, 2006, Cosme signed a letter of resignation due to her husband's health condition, Docket No. 54–2; (h) on April 9, 2007, Cosme filed a claim with the EEOC, Docket No. 106–1; (i) Cosme received the EEOC's Notice of Suit Rights dated July 9, 2007, Docket No. 106–2; (j) the instant action followed on October 5, 2007; (k) as of November 19, 2009 when the defendants took Cosme's deposition, she testified that she was still unable to return to work, as she had then not been medically discharged, Docket No. 101–2, page 20; (l) Cosme never requested a reasonable accommodation to the Municipality, except for one year of leave without pay, and without providing an estimated date to return to work, Docket No. 1, ¶¶ 15, 16, and Docket No. 50–2, ¶¶ 17–18. The Court notes that plaintiff did not oppose the fact that she never requested a reasonable accommodation except for the one year of leave without pay starting from January 2007.

In sum, during the year 2006, Cosme suffered a health condition of bone spurs in her foot that required medical treatment and surgery. Although Cosme had a foot surgery on or about late June or early July 2006, she was on medical leave from August 10, 2006 until December 2006 when she stopped receiving SINOT checks.[1] Plaintiff Cosme claims that she was constantly harassed and discriminated against because of her health condition by Mayor

Hernández, and other personnel in front of third parties. Cosme further alleges that defendant Hernández told her she was too old and that he needed young people.

By December 18, 2006, Cosme alleges she felt forced to resign and tendered her letter of resignation. *See* Docket No. 50–3. Cosme allegedly met with Mayor Hernández sometime in December 2006 in his office and requested a leave of one-year without pay upon tendering the Mayor her resignation letter. The Mayor allegedly told Cosme not to worry that he already asked Carlos Colon, his special aid, about her sick leave and asked Cosme to meet with Carlos Colon. Complaint, Docket No. 1, page 4, ¶ 16. Cosme further alleges that at the meeting with Carlos Colon, he informed her that the one-year leave without pay would not be granted. Docket No. 1, page 4, ¶ 16. Subsequently, plaintiffs herein filed a complaint with the United States Equal Employment Commission ("EEOC") on April 9, 2007, and the Notice of Right to Sue was issued on July 9, 2007. Docket entries No. 106–1 and 106–2. The instant action was filed on October 5, 2007.

In the instant Complaint, Plaintiffs allege that Higinia Cosme felt forced to resign due to constant harassment, discrimination and threat due to her health condition and age under Title VII and Title 42, 42 U.S.C. § 1983 ("Section 1983"), 29 U.S.C. §§ 621 *et seq.*, the Age Discrimination in Employment Act ("ADEA") 42 U.S.C. §§ 12101 *et seq.*, and the American

---

**1.** SINOT constitutes a local law which protects the employee in cases of non-work related sickness and/or disability conditions. *See* 11 L.P.R.A. §§ 201–212. The court notes that the record is devoid of any information regarding Cosme's medical condition, *albeit* that Cosme never submitted a medical certificate in support of her allegations pled in the complaint. *See* Docket No. 1. The only information before the court regarding the facts of the case is Cosme's deposition, taken almost three years after her resignation, *see* Docket

No. 101–1. Plaintiff received disability benefits for a period of 26 weeks, as provided by 11 L.P.R.A. § 203(c). *See also* Cosme's deposition, Docket No. 101–2, pages 17–20. 11 L.P.R.A. § 203(c)(1)(1) provides in its relevant part: "Disability benefits shall be paid commencing on the eighth day of the disability and thenceforth while said disability lasts, **but not for more than 26 weeks in any disability period** nor in any period of 52 consecutive calendar weeks ..." (Emphasis ours).

with Disability Act ("ADA") 42 U.S.C. § 12112 *et seq.* Plaintiff also claims causes of action under local labor laws, as well as under the Puerto Rico Civil Code.[2]

On December 7, 2009, defendants, the Municipality and the Mayor Ramon A. Hernandez Torres ("Mayor Hernandez") filed a motion for summary judgment with the corresponding statement of uncontested facts and exhibits in support thereof. *See* Docket No. 50. Plaintiffs filed their response in opposition for summary judgment on May 23, 2010. *See* Docket entries No. 73 and 74. On May 28, 2010, the defendants moved the Court for sanctions against plaintiffs and for an order regarding additional uncontested facts. *See* Docket entries No. 75, 76. Plaintiffs opposed the defendants' requests on May 31, 2010. *See* Docket No. 77. A Status Conference was held on June 17, 2010, wherein the Court granted the defendants ten days to reply to plaintiffs' uncontested facts, and granted leave to supplement their motion for summary judgment after the discovery has been completed. *See Minutes* of June 17, 2010, Docket No. 78. Defendants' motion for sanctions was held in abeyance. *Id.* On July 6, 2010, the defendants filed their position regarding plaintiffs' additional uncontested facts. *See* Docket No. 85. After months of delay, for excusable reasons, including plaintiffs' counsel repeated legitimate service in the armed forces, a Status Conference was held on November 27, 2012. The parties informed the Court that settlement negotiations had been unsuccessful, and granted the defendants until December 11, 2012 to update their motion for summary judgment. *See Minutes* of November 27, 2013, Docket. No. 99. · Likewise, plaintiffs were granted until December 27, 2012 to supplement their response to the defendants' motion for summary judgment, as supple-

mented. *Id.* The record shows that the defendants filed their *Supplemental Memorandum in Support of Motion for Summary Judgment* on December 11, 2012, Docket No. 100. On December 21, 2012, plaintiffs filed their *Response in Opposition to Supplemental Memorandum in Support of Motion for Summary Judgment,* Docket No. 101.

### Applicable Law and Discussion

### The Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") provides that a judgment may be entered when the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Johnson v. University of Puerto Rico,* 714 F.3d 48, 52 (1st Cir.2013); *Prescott v. Higgins,* 538 F.3d 32, .40 (1st Cir.2008) (citing *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 175 (1st Cir. 2008)). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Johnson,* 714 F.3d at 52, quoting *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996). *See also Prescott v. Higgins,* 538 F.3d at 40; *Mendez–Martinez v. Caribbean Alliance Ins. Co.,* 851 F.Supp.2d 336, 342 (D.P.R.2012). On the other hand, a fact is considered material if it has the potential to "affect the outcome of the suit under governing law." *Sands v. Ridefilm Corp.,* 212 F.3d 657, 660–661 (1st Cir.2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d

---

**2.** Public Law No. 80 of May 30, 1976 as amended, also known as Puerto Rico Sever-

ance Law; Puerto Rico Civil Code Art. 1802, 31 L.P.R.A. § 5141.

202 (1986)). *See also Caribbean Alliance Ins. Co.*, 851 F.Supp.2d at 342. The moving party has the burden of proving both of these elements. *Perez v. Saint John's School*, 814 F.Supp.2d 102, 108 (D.P.R. 2011) (citing *Vega–Rodriguez v. Puerto Rico*, 110 F.3d 174, 179 (1st Cir.1997)).

Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably be found in his or her favor. *Caribbean Alliance Ins. Co.*, 851 F.Supp.2d at 342 (citing *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997); *Celotex Corp.* 477 U.S. at 323, 106 S.Ct. 2548 (1986)). *See also Johnson v. University of Puerto Rico*, 714 F.3d 48, 52 (1st Cir.2013). To prove that there are genuine issues of material facts, the non-moving party may not rely on mere conclusory allegations, improbable inferences and unsupported speculation. *Id.* at 343 (citing *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Therefore, the mere existence of some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment. *Id.* (citing *Liberty Lobby, Inc.*, 477 U.S. at 247–248, 106 S.Ct. 2505).

At the summary judgment stage, the trial court examines the record in the light most favorable for the non-movant and indulges in all reasonable inferences in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material facts may the court enter summary judgment. *Cadle Co. v. Hayes*, 116 F.3d 957, 959–60 (1st Cir.1997). However, while the court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] … [the court] will not draw unreasonable inferences or credit bald assertions, empty conclusions or rank conjec-

ture." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir.2010) (internal quotations and citations omitted).

Moreover, "the court will not consider hearsay statements or allegations presented by parties that do not properly provide specific citation to the record." *Id.* (citing *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). "Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, '[e]vidence that is inadmissible at trial, such as, inadmissible hearsay, may not be considered on summary judgment.' " *Ramos–Echevarria v. Pichis, Inc.*, 698 F.Supp.2d 262, 266 (D.P.R.2010) (citing *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir.2005); *Vázquez v. López–Rosario*, 134 F.3d 28, 33 (1st Cir.1998); accord *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990)). Consequently, the facts considered herein are only those properly supported by the defendants' motion for summary judgment with memoranda in support and plaintiffs' oppositions.

Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000)(finding that "determinations of motive and intent … are questions better suited for the jury").

Further, "[a]s we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." *Rodriguez v. Municipality of San Juan*, 659

F.3d 168, 178–179 (1st Cir.2011)(internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera v. McHugh*, 622 F.3d 17, 26 (1st Cir.2010)(internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas de P.R. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir.2011)(internal citations omitted).

Lastly, the Court will not consider allegations presented by parties that do not properly provide specific reference to the record. *See* D.P.R. CIV. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced"); *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate).[3]

### Overview of all Claims

In the instant case, the defendants argue, *infra*, (1) the cause of action under 42 U.S.C. § 1983 is time-barred; (2) plaintiff Cosme is not disabled or perceived disabled within the meaning of ADA, *see infra*, nor can she perform her job with or without reasonable accommodation, as she was never discharged from her foot surgery, including the date when she resigned due to her husband's health condition; (3) as to age discrimination in employment, plaintiffs failed to prove that someone younger was hired to perform Cosme's duties; *see infra*, and finally, as to the constructive discharge, (4) the plaintiffs failed to prove that the "working conditions were so intolerable [...] that a reasonable person would feel compelled to forsake her job rather than to submit to looming indignities," Docket No. 100, as is required in a constructive discharge claim. Plaintiffs, on the other hand, limit their oppositions by stating that "there are material controversies as to the facts presented by the defendants." *See* Docket entries No. 73 and 101. However, plaintiffs failed to describe the genuine issues of material fact that are under controversy and discuss what are the genuine issues of material facts in controversy that impair the entry of summary judgment. The Court briefly explains.

### The Americans with Disabilities Act ("ADA")

The ADA prohibits covered employers from discriminating against qualified individuals with disabilities because of their disabilities. 42 U.S.C. § 12112(a). A qualified individual under ADA is a person

---

3. D.P.R. CIV. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ting], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by record citation." D.P.R. CIV. R. 56(c).

who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

■■■ In order to be considered disabled under the definition of ADA a person must (1) have a physical or mental impairment that substantially limits one or more life activity; (2) have a record of having such impairment; or (3) be "regarded as" having such an impairment. *Saint John's School,* 814 F.Supp.2d at 115 (citing *Sanchez–Figueroa v. Banco Popular de P.R.,* 527 F.3d 209, 214 (1st Cir. 2008)). The Supreme Court has established that merely alleging impairment is not enough to claim protection under ADA. *See also Ramos–Echevarría v. Pichis, Inc.,* 659 F.3d 182 (1st Cir.2011). Therefore, "evidence of impairment which is supported only with a medical diagnosis or conclusory assertions of disability by a physician are insufficient to show disability for the purposes of the ADA."[4] *Saint John's School,* 814 F.Supp.2d at 117 (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)). The existence of a disability under the definition of ADA

has to be determined case by case but it is the plaintiff's duty to show that her alleged disability substantially limits a major life activity. *Id.* at 116 (citing *Toyota,* 534 U.S. at 198, 122 S.Ct. 681). The courts have interpreted that a major life activity refers "to those activities which are of central importance to daily life." *Benoit v. Tech. Mfg. Corp.,* 331 F.3d 166, 176 (1st Cir.2003).

■■■ After having shown that an impairment qualifies as a disability, a plaintiff may establish liability under ADA by: (a) using either direct or circumstantial evidence, *see Ramos–Echevarría v. Pichis, Inc.,* 659 F.3d 182, 188 (1st Cir.2011) (citing *Jacques v. Clean–Up Group, Inc.* 96 F.3d 506, 511 (1st Cir.1996)); (b) when direct evidence of discrimination is lacking, the plaintiff may satisfy the traditional elements of a *prima facie* case, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and lastly (c) "as being regarded [by the employer] as having such an impairment," 42 U.S.C. § 12102(2), *see Katz v. City Metal Co., Inc.,* 87 F.3d 26, 30–31 (1st Cir.1996).[5]

The United States Court of Appeals for the First Circuit (hereinafter the "First

---

4. The Court clarifies that even a medical certificate is insufficient to prove that a person is disabled under ADA. As explained in *Saint John's School,* 814 F.Supp.2d at 117, and *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), "a plaintiff must submit 'evidence that the extent of the limitation caused by [her] impairments in terms of [her] own experience is substantial.'" The Court is cognizant that ADA was amended in the year 2008, effective on January 1, 2009. The facts that triggered the instant action, however, are not covered by the 2008 ADA Amendments, as the facts alleged in the instant complaint occurred during the year 2006. In the instant case, plaintiff Cosme voluntarily resigned on December 18, 2006 due to the health condition of her husband, notwithstanding, that her contract with the Municipality was due to expire in February 2007. "The main purpose

of the 2008 ADA amendments was to restore "the broad scope protection intended to be afforded by the ADA." *See* Publ. No. 110–325. The Court further notes that the 2008 ADA Amendments does not apply retroactively, hence, there is no reason to disturb the analysis made under the law prior to the ADA Amendments effective January 1, 2009. *See Ramos–Echevarria v. Pichis, Inc.,* 698 F.Supp.2d 262, 268, n. 3 (D.P.R.2010).

5. In *Katz,* 87 F.3d at 33, the Court analyzes "being regard as" under 42 U.S.C. § 12102(2)(C):

Under the regulations an individual who has an impairment that is not substantially limiting (or has no impairment at all) is nevertheless "disabled" if he [or she] is treated by the employer as having an impairment that does substantially limit major life activities. 29 C.F.R. § 1630.2(*l*)(1).

Circuit"), has pellucidly stated that an ADA claim may be the established three part analysis. *See Ramos–Echevarría v. Pichis, Inc.,* 659 F.3d at 187–188 (citing *Jacques v. Clean–Up Group, Inc.* 96 F.3d at 511 (1st Cir.1996)).

We apply a three-part analysis to determine whether an impairment qualifies as a disability under the ADA. *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Carroll v. Xerox Corp.,* 294 F.3d 231, 238 (1st Cir.2002). First, the plaintiff must establish that he suffers from a physical or mental impairment. [FN8] *Carroll,* 294 F.3d at 238. Second, he must demonstrate that it affects life activities that are "major," *i.e.,* "of central importance to daily life." *Id.* Major life activities are basic activities of daily life that an average person in the general population can perform with little or no difficulty— "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i) (1991). Finally, he must show that the impairment "substantially limits" the identified major life activity. *Carroll,* 294 F.3d at 238 (citing *Lebrón–Torres v. Whitehall Labs.,* 251 F.3d 236, 239–40 (1st Cir.2001)).

[FN8.] The EEOC defines an impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or any mental or physiological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h) (1991).

It has been established that when opposing a properly supported motion for summary judgment, a plaintiff bears the burden of proving each of the elements of the ADA *prima facie* case of discrimination, including the existence of a disability. *Bailey v. Georgia–Pacific Corp.,* 306 F.3d 1162, 1166 (1st Cir.2002).

■ As to the factors to be met under the ADA, the plaintiff failed to establish the first element of the *prima facie* case. The Court finds that nowhere in the record there is any indication of plaintiffs' attempt to establish that Cosme was disabled under the definition of the ADA. Plaintiffs simply alleged in the Complaint that defendant Hernandez discriminated against Cosme due to her health condition. *See* Docket No. 1, ¶ 17. This assertion was also merely alleged in vague and general fashion in the plaintiffs' oppositions to summary judgment and to supplemental memorandum in support of summary judgment. *See* Docket entries No. 73 and 101. No evidence was introduced to prove Cosme's disability under the ADA, other than Cosme's own self-serving testimony. At the instant summary judgment stage, mere allegations are insufficient[6]. *See*

6. The Court notes that plaintiff Cosme's opposition is also devoid of any specific supported allegations to contest the defendants' uncontested material facts. Cosme simply opted to file her deposition with the Court to, once again, perform counsel's homework and find the evidence, if any, in the record. The fact that plaintiffs' counsel made reference to certain pages of plaintiff Cosme's deposition without any analysis, does not comply with Local Rule 56(c)(d)(e) for the United States District Court for the District of Puerto Rico. It is settled that the courts do not have to do counsel's homework. *See Zimmerman v. Puccio,* 613 F.3d 60, 63 (1st Cir.2010) ("We have reiterated the importance of such rules [Local

*also Opposition to the Summary Judgment,* Docket No. 73 and the *Opposition to Supplemental Memorandum in Support of Motion for Summary Judgment,* Docket No. 101.

A review of the record fails to show any admissible evidence establishing plaintiff's medical history, as no medical record was introduced to establish that Cosme has a disability which is substantially limiting one or more life activity under ADA prior to January 1, 2009. In sum, plaintiff Cosme has failed to show that: (a) she has a physical condition that substantially limits a major life activity; (b) she had a record of such impairment; or (c) she was "regarded as" having it;[7] that is, that Cosme was "regarded" by the employer as having a condition that substantially limited a major life activity.[8] On the contrary, it is clear from plaintiff Cosme's own admissions that her supervisors were expecting her to return to work normally despite her health condition. *See* Docket No. 101-

1, page 14, lines 20–25 and page 15, lines 1–6. The Court thus concludes that there is no evidence in the record in support as to any of the elements necessary for an ADA claim, not even in the plaintiffs' response to the motion for summary judgment. Hence, plaintiffs were simply unable to satisfy the first prong of the *prima facie* ADA standard.

■ Plaintiffs have also disregarded the duty to prove the second prong of the *prima facie* standard, that is, that Cosme is a qualified individual able to perform the essential functions of her job, with or without reasonable accommodation. To this end, plaintiff Cosme admitted in her testimony offered at the taking of her deposition on November 19, 2009, Docket No. 101-2, that she was still unable to return to work on the date of her deposition, that is, almost three years after her resignation, thus proving that she was not able to perform the essential functions of her job on or before the expiration of her employ-

Rule 56(c)(d)(e)-District of Puerto Rico] to the district courts in preventing litigants from shifting the burden of organizing evidence to the district court, and 'we treat the district court's decision to apply [them] with deference.' *Carreras v. Sajo, Garcia & Partners,* 596 F.3d 25, 31 (1st Cir.2010). In this case, the defendants' failure to provide any citations whatsoever in their opposition statement leaves no doubt as to their noncompliance. That the parties filed cross motions for summary judgment does not affect either party's obligation to comply with the local rule. *See P.R. Am. Ins. Co. v. Rivera–Vazquez,* 603 F.3d 125, 132 (1st Cir.2010) ("A party cannot circumvent the requirements imposed by an anti-ferret rule simply by filing a cross-motion for summary judgment and expecting the district court to do its homework.")"). *See also Acevedo–Perez v. U.S. Government,* 768 F.3d 51, 56 (1st Cir.2014). Further, an argument insufficiently developed is deemed waived. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (explaining that legal points alluded to in a perfunctory manner, but unaccompanied by developed argumentation, are deemed abandoned).

7. The Court, however, stated in *Perez v. Saint John's School,* 814 F.Supp.2d at 117, that allegations of impairment which are supported by medical certificates or conclusory assertions of disability by a physician are insufficient to show disability for the purposes of the ADA. The Court further notes that the record is devoid of any medical evidence and/or certificates corresponding to plaintiff Cosme's alleged disability. The Court is cognizant that the defendants requested information through discovery to plaintiffs relating to the medical condition and potential disability of Cosme, and that plaintiffs submitted the information requested tardy, that is, after the defendants' motion for summary judgment was filed. *See* Docket entries No. 75 and 77, page 2, ¶ 4. However, Cosme's personnel and medical records were not filed with the Court.

8. The First Circuit in *Noviello v. City of Boston,* 398 F.3d at 84, has clearly stated that the court is not required to consider hearsay statements at the summary judgment stage.

ment contract which was due to expire in February 2007. *See* Docket No. 101–2, page 20, lines 16–18.

Given that plaintiff Cosme was unable to prove the first and second prong of the ADA *prima facie* case, defendant Hernandez' motion for summary judgment filed under Docket No. 50, is granted as to plaintiff's claim of discrimination under the ADA. The Court later finds, in the discussion that follows, that Cosme resigned not being able to prove the high standard required to prove a forced resignation or "constructive discharge" based upon "intolerable" working environment.

The Court further does not understand plaintiff's proposition under ADA alleging a violation to the law when there is no request for an accommodation specially when she could not work at all for another year after the foot surgery, particularly when plaintiff Cosme was still under contract when she continued to be disabled and further resigned voluntarily due to the health of her husband. Plaintiff is, thus, requesting another yearly contract with Head Start knowing that she cannot comply with the contract.

In sum, the Court finds that plaintiff Cosme's ADA claim is to be dismissed with prejudice, based upon Cosme's failure to prove that she was "qualified to perform the essential functions of the job, with or without reasonable accommodations," and that she "was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Ramos–Echevarría*, 659 F.3d at 186. Hence, plaintiff Cosme's ADA claim is to be dismissed with prejudice.

### The Age Discrimination in Employment Act ("ADEA")

■ The ADEA is a federal statute which prohibits discrimination against employees who are 40 years or older. 29 U.S.C. §§ 621–634.[9] Like in an ADA claim, plaintiffs who claim age discrimination and who do not have direct evidence of the alleged discrimination, may use indirect or circumstantial evidence following the burden-shifting test used in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a *prima facie* case by establishing that (1) she is a member of a protected age group (older than 40); (2) she was qualified for the position in question; (3) she was adversely affected in some way despite her being qualified for the job; and (4) someone who was younger with the same or less qualifications was treated more favorably. Should plaintiff Cosme satisfy the initial *prima facie* stage by establishing the four factors of the *McDonnell Douglas* test, then the burden shifts to the employer to articulate some legitimate non-discriminatory business reason as to the adverse action taken by the employer. *McDonnell Douglas*, 411 U.S. at 802–803, 93 S.Ct. 1817.

■ Moreover, in ADEA cases, "a plaintiff must prove that age was the 'but for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 168, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009); *Cruz v. Bristol–Myers Squibb Co., P.R., Inc.*, 699 F.3d 563, 570–571 (1st Cir. 2012); *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441 (1st Cir.2009).

It is important to note that plaintiffs, at summary judgment stage, have not explicitly complied with the elements of the *prima facie* case in their oppositions to summary judgment and its supplemental

---

**9.** The Court is satisfied that plaintiff timely and properly exhausted the remedies provided under the EEOC. *See* Docket entries No. 106–1 (EEOC Complaint dated April 9, 2007), and 106–2 (EEOC's Right to Sue Letter).

memorandum in support of summary judgment.[10] *See* Docket entries No. 74 and 101. Nevertheless, it is the Court's view that plaintiffs were able to easily establish the first two elements of the ADEA *prima facie* case, given that Cosme was 69 years old at the time the instant action was filed, and there has been no allegation in the record that she was not qualified for her job position. In sum, it is uncontested that Cosme was a member of a protected class at the time of her employment with the Municipality, as she was older than 40 years old, and her performance was according to her job position, given the fact that her contract of employment had been renewed more than once.[11] *See* Docket No. 101–2, pages 33–34. The Court reminds the parties that plaintiff voluntarily resigned on December 18, 2006, that is, during the yearly contract that became effective on March 1, 2006 through February 28, 2007. Moreover, Cosme resigned on December 18, 2006, after being absent from work from on or about June 2006 until she delivered her resignation letter due to her husband's illness.

Plaintiffs also allege that Cosme was adversely affected because of her age and that someone younger was eventually hired for her position, therefore addressing the third and fourth elements of the *prima facie* case. *See* Docket No. 73, pg. 6, ¶ 19. The Court's analysis will focus on these two elements to determine whether indeed plaintiff has a valid claim under the ADEA.

██ Cosme generally alleges that was adversely affected as she was forced to resign given the constant harassment and discrimination against her because of her age. The record, however, is devoid of temporal proximity supporting non-hearsay evidence that may stand for the proposition that indeed there is a *prima facie* case based on age discrimination. Hence, the ADEA claim should be dismissed with prejudice, as plaintiff Cosme's statement constitutes hearsay non-valid evidence to support plaintiffs' case. In her final analysis, plaintiff Cosme also failed to prove that a younger person was hired to perform her job, thus, constituting an unsupported hearsay allegation made by Cosme, and the only evidence presented to attest this fact is Cosme's own self-serving hearsay testimony, as she never saw the person that allegedly took her place while she could not report to perform her assigned

---

**10.** As stated above, when opposing a properly supported motion for summary judgment, the non-moving party must address the elements of the *prima facie* case. *Saint John's School*, 814 F.Supp.2d at 116 (citing *Bailey v. Georgia–Pacific Corp.*, 306 F.3d 1162, 1166 (1st Cir.2002), which addresses the case of an ADA claim specifically, but nonetheless is applicable to any discrimination claim).

**11.** The record shows that Cosme has been working with the Municipality since September 12, 2003 until she voluntarily resigned on December 18, 2006, that is, prior to the expiration of her employment contract which was due to expire in February 2007. Hence, Cosme's contract was renewed more than once. Furthermore, the Court notes that Cosme was hired by the Municipality "while [she] was above the ADEA protected age group," aside from the uncontested fact that her employment contract was renewed more than once. *See Mendez–Martinez v. Caribbean Alliance Ins. Co.*, 851 F.Supp.2d 336, 348–349 (D.P.R.2012); *see also Alicea v. Ondeo de Puerto Rico*, 389 F.Supp.2d 269 (D.P.R.2005). Hence, viewing these facts in the light most favorable to plaintiff, the Court cannot conclude that the conduct of the Municipality thru the Mayor "was sufficiently severe or pervasive to merit continuing to trial a claim of hostile work environment" or ADEA for discrimination purposes. *Id.* Moreover, it is important to note that the Mayor did not terminate plaintiff Cosme from her employment nor cancel her employment contract. Plaintiff Cosme voluntarily resigned from her employment and her contract "due to her husband's health condition." *See* Docket No. 54–2. *See also infra Constructive Discharge* of this *Opinion and Order*.

job. *See* Docket No. 101–2, page 45, lines 12–21.[12]

Hence, defendant's motion for summary judgment, Docket No. 50, is granted as to plaintiffs' claim of discrimination under the ADEA, and this claim is also to be dismissed with prejudice. *See also Adamson v. Walgreens Co.*, 750 F.3d 73 (1st Cir. 2014). In *Adamson v. Walgreens*, an ADEA case, *supra* at 83, the Court held:

> In sum, being mindful "that courts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive and intent," *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir.2000) (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir.1998)), and "viewing the 'aggregate package of proof offered by [Adamson]' and taking all inferences in [his] favor," *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 431 (1st Cir.2000) (quoting *Mesnick [v. General Electric Co.]*, 950 F.2d [816] 824–25 [ (1st Cir.1991) ] ), we conclude that the record is devoid of evidence from which a jury could infer that [Walgreens'] proffered reason for terminating Adamson was pretext designed to disguise age discrimination.

█ In the instant case, after a thorough review of the evidence presented, the Court finds that plaintiff Cosme also failed to meet the ADEA test, wherein the plaintiff has the burden to prove that "age was the but-for-cause" for her termination. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). Lastly, it is important to note that plaintiff Cosme was never terminated from her employment, but she voluntarily resigned prior to the expiration of her employment contract. *See* Docket No. 50–3.

As stated above, the Court notes that plaintiff Cosme worked under contract with the Municipality during the years 2003–2004; 2004–2005; 2005–2006; and finally from March 1, 2006 to February 28, 2007. In the instant case, Cosme worked as a kitchen assistant with funds provided by the federal Head Start Program, which is managed by the Municipality of Juana Diaz. Cosme resigned on December 18, 2006, before the expiration of her contract on February 28, 2007. The Court notes that Cosme worked only three months under the contract that was current at the time of her resignation, that is, March, April and May of 2006, as she had spurs' surgery on her foot sometime between early June or July 2006, and was not ready to return until her [sudden] resignation on December 18, 2006 due to the husband's health condition.

The record further shows that plaintiff Cosme voluntarily submitted herself to a procedure to remove bone spurs in one foot heel sometime in June/July 2006, and that plaintiff exhausted all of her medical leave, 26 weeks of pay under SINOT without returning back to work. She never requested a reasonable accommodation other than insisting on an additional year of leave without pay. Notwithstanding, Cosme remained not yet medically discharged on the date of her taking of deposition on November 19, 2009, that is, more

---

12. In plaintiff Cosme's deposition she admits that she has not seen the person hired to do her job but that other people have assured her that she is younger:

> Question: At this time, do you know who works at the Head Start in Pastillo?
> Answer: I know that they hired someone that's younger than me.

> Question: My question is: do you know who works at Pastillo [Cosme's working place]? Is your answer yes or no?
> Answer: **No, I don't know her.** (Emphasis ours).
> *See* Docket No. 101–2, page 45, lines 12–17.

than three years after her foot surgery. *See infra n.* 14 under the *Constructive Discharge* discussion.

■ Cosme alleges discrimination due to age against the Municipality and the Mayor. But there is no personal/individual liability under ADA and/or ADEA. *See Roman–Oliveras v. PREPA,* 655 F.3d 43, 45 (1st Cir.2011) ("On an issue of first impression for our circuit, we conclude that Title I of the ADA [notwithstanding plaintiffs' assertion that the matter had not been solved by the First Circuit] does not provide for liability against individuals who are not themselves employers"). In *Roman–Oliveras v. PREPA,* 655 F.3d at 48, the Court held:

> To state a claim of disability discrimination under Title I of the ADA, Roman needed to allege facts showing that (1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, because of his disability. *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 82 (1st Cir. 2008); *Bailey v. Ga.-Pac. Corp.,* 306 F.3d 1162, 1166 (1st Cir.2002). An individual is disabled for purposes of the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Ruiz Rivera,* 521 F.3d at 82; see also 42 U.S.C. § 12102(2) (2008). *FN9*
>
> FN9. The ADA Amendments Act of 2008, Pub.L. No. 110–325, § 2(a)(4)-(6), 122 Stat. 3553, which took effect January 1, 2009, does not apply here, as the Act does not retroactively cover activities that occurred before its passage. *See Carreras v. Sajo, Garcia & Partners,* 596 F.3d 25, 33 n. 7 (1st Cir.2010). We therefore rely on the pre-amendment statutory provisions and the case law interpreting those provisions.

In *Roman–Oliveras, supra* at 49, the Court further held:

> To prove a regarded as claim against his employer, a plaintiff ordinarily must show either that the employer (1) "mistakenly believes that [he] has a physical impairment that substantially limits one or more major life activities," or (2) "mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), *superseded* by statute, ADA Amendments Act of 2008, Pub.L. No. 110–325, § 2(a)(4)-(6), 122 Stat. 3553; *see also Ruiz Rivera,* 521 F.3d at 83; *Sullivan v. Neiman Marcus Grp., Inc.,* 358 F.3d 110, 117 (1st Cir.2004).

The appellants in *Roman–Oliveras,* 655 F.3d at 50–51, alleged that the ADA claims against them should be dismissed "because individuals are not subject to liability under Title I of the statute." Appellants "acknowledge that neither we nor the Supreme Court has explicitly rejected individual liability under the ADA, but point out that a number of other circuits have taken that view." *Id.* Appellants further "assert that such a conclusion is the logical extension of our holding that Title VII, an analogous statute, does not support personal capacity claims. *See Fantini v. Salem State College,* 557 F.3d 22, 31 (1st Cir.2009)." *Id.* The Court in *Roman–Oliveras,* 655 F.3d at 50–52, made the following analysis relating to the non-individual liability under Title VII, as set forth in *Fantini,* and its parallel application to Title I of the ADA, as this is an issue of first impression to the First Circuit:

> We agree that the logic of *Fantini* is compelling here. As other courts have

observed, "[t]he statutory scheme and language of [Title I of] the ADA and Title VII are identical in many respects." *Walsh [v. Nevada Department of Human Resources* ], 471 F.3d [1033] at 1038 [ (9th Cir.2006) ]; *see also, e.g.,* [*EEOC v.*] *AIC* [*Security Investigations, Ltd.*], 55 F.3d [1276] at 1279–80 [ (7th Cir.1995) ]. Both statutes direct their prohibitions to "employer[s]," [*FN12* ] and the ADA's definition of employer mirrors Title VII's. Under both, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such ... person." 42 U.S.C. § 12111(5)(A)(ADA); *see also id.* at § 2000e(b) (Title VII).

> FN12. The ADA prohibits discriminatory conduct by a "covered entity," 42 U.S.C. § 12112(a), and provides that "[t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee," id. at § 12111(2). Title VII states, inter alia, that specified discriminatory practices are unlawful "for an employer." 42 U.S.C. § 2000e–2(a).

In *Fantini,* we recognized that Title VII's exemption for small employers signified an intention not " 'to burden small entities with the costs associated with litigating discrimination claims.' " 557 F.3d at 29 (quoting *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir. 1993)). We quoted the Ninth Circuit's observation that " '[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.' " *Id.* (quoting *Miller,* 991 F.2d at 587). Hence, we accepted that the statutory reference to "any agent" in the definition of "employer" does not connote individual liability, but " 'simply ... establish [es] a limit on an employer's

liability for its employees' actions.' " *Fantini,* 557 F.3d at 30 (quoting *Lissau v. S. Food Serv., Inc.,* 159 F.3d 177, 180 (4th Cir.1998)); *see also Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996) (noting that "the 'agent' language was included to ensure respondeat superior liability of the employer for the acts of its agents").

We also relied on precedent noting that changes to Title VII's remedial scheme enacted in 1991—applicable to the ADA as well—bolstered the conclusion that individuals are not liable under the statutes. *Fantini,* 557 F.3d at 31; see 42 U.S.C. § 1981a....

Thus, we concluded that neither the original remedial scheme nor the amendments contemplated individual liability. *See Fantini,* 557 F.3d at 30–31; *see also AIC,* 55 F.3d at 1281; *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1077 (3d Cir.1996) (en banc) (noting that Congress's failure to state "the amount of damages, if any, that would be payable by individuals ... strongly suggests that [it] did not contemplate that such damages would be assessed against individuals who are not themselves the employing entity").

We see no basis for reaching a different outcome under Title I of the ADA. Indeed, given the parallel statutory language and the identical 1991 amendment to the statutes' remedial provisions, we think it apparent that Congress intended that these two employment discrimination provisions be treated uniformly. **We thus agree with the virtually universal view that Title I of the ADA, like Title VII of the Civil Rights Act, " 'addresses the conduct of employers only and does not impose liability on co-workers.' "** *Fantini,* 557 F.3d at 31 (quoting *Powell v. Yellow Book U.S.A., Inc.,* 445 F.3d 1074, 1079 (8th Cir.2006)). (Emphasis ours).

Hence, based on the analysis made by the First Circuit, the Court finds that the Mayor is not personally liable under the ADA/ADEA claims alleged by Cosme.

### The "Same Actor Inference" Doctrine

 Finally, the Court understands that the "same actor inference" doctrine is applicable, as the Mayor had granted Cosme, an employment contract at the age of 65, considering that she alleged to be 69 at the time of the filing of the instant complaint on October 5, 2007, *see Complaint*, Docket No. 1, ¶ 11, having the Mayor consistently renewed her yearly contract with Head Start since the year 2003. Cosme was first hired under contract by Head Start managed by the Municipality, in September 2003. Further, Cosme had worked only the months of March through May/June of 2006, under the new contract effective March 1, 2006 to February 28, 2007, when she had a surgical procedure on her heel, and she never returned to work thereafter. The "same actor inference" is triggered by the fact that the hirer is the same person or the same "actor" that terminates the employee, that is, the Mayor in the instant case. *See Proud v. Stone*, 945 F.2d 796, 798 (4th Cir.1991) ("there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer, and the early resolution of this question need not be derailed by strict fealty to proof schemes").

In the instant case, the Court agrees with the "strong version" of the interpretation of the "same actor inference" doctrine to the extent that Cosme resigned voluntarily and no presumption of discrimination applies because the same actor that is allegedly discriminating against Cosme on the basis of her age is the same person that hired her, and repeatedly renewed her yearly contract until she resigned voluntarily on December 18, 2006 due to her husband's health condition. In fact, the Court notes that prior to Cosme's resignation, the record shows that the actions of the Mayor had been consistent regarding the renewal of Cosme's yearly contract with Head Start, being the last contract renewed effective on March 1, 2006 until February 28, 2007. Notwithstanding plaintiff's discrimination allegations, the record shows that Cosme stopped working on or about June 2006, that is, shortly after the Mayor's renewal of her contract. Hence, the Court finds that "in the light most favorable to plaintiff and drawing all inferences in [her] favor, the Court cannot overlook the 'same actor inference.'" *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 847 (1st Cir.1993); *see also McMillan v. Mass. Soc'y. for Prev. of Cruelty to Animals*, 140 F.3d 288, 303 n. 10 (1st Cir.1998), *cert. denied*, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999).

### Constructive Discharge

 Plaintiff Cosme alleges that she was forced to resign, and alleges constructive discharge. Cosme further asserts she felt forced to resign due to constant harassment, age and disability discrimination, as well as threats. As stated above, the Court finds that Cosme is not disabled within the meaning of the ADA nor did she prove the age discrimination elements of the *prima facie* case in her ADEA claim. However, Cosme's constructive discharge claim must also fail for another reason, that is, Cosme's voluntary resignation letter. *See* Docket No. 50–3.[13]

---

13. The fact is that Cosme exhausted her SINOT benefits and never submitted a final medical certificate to her employer indicating whether or not she was fit to return to work. The Court notes that Cosme resigned voluntarily during the term of her contract, which was due to expire on or about February 2007 due to the health condition of her husband "debido a la condición de salud de mi esposo." *See* Docket No. 50–3.

A review of the record further shows that plaintiff Cosme has failed to show any severe and pervasive hostile work environment that may have resulted in a protected constructive discharge, *see Gerald v. U.P.R.,* 707 F.3d 7, 25 (1st Cir.2013).

The record clearly states that, notwithstanding plaintiff was receiving benefits at SINOT (non-work related injury or incapacity), for a long period of time, she never indicated when she would return to work. *See* Plaintiff Cosme's deposition at Docket No. 50–4, pages 6–7.[14] Plaintiff Cosme had not been medically discharged to return to work at the time of the taking of her deposition on November 19, 2009, that is, more than three years after her surgical procedure performed to eliminate bone spurs on her foot. *See* Plaintiff Cosme's deposition at Docket No. 50–4, page 8.

■ It has been pellucidly established that if a plaintiff alleges constructive discharge in any employment discrimination claim an additional element is added to the *prima facie* case. *Mendez–Martinez v. Caribbean Alliance Ins. Co.,* 851 F.Supp.2d at 346 (citing *Landrau–Romero v. Banco Popular De Puerto Rico,* 212 F.3d 607, 612 (1st Cir.2000)). "Constructive discharge typically 'refers to harass-ment so severe and oppressive that staying on the job while seeking redress-the rule save in exceptional cases-is intolerable.'" *Gerald v. University of Puerto Rico,* 707 F.3d at 25 (citing *Lee–Crespo v. Schering–Plough Del Caribe, Inc.,* 354 F.3d 34, 45 (1st Cir.2003)). "A successful constructive discharge claim requires 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Gerald,* 707 F.3d at 25 (citing *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)). *See also Saint John's School,* 814 F.Supp.2d at 119 (citing *Feliciano–Hill v. Principi,* 439 F.3d 18, 26 (1st Cir.2006)) (the environment she was subject to was so onerous, abusive and unpleasant that a reasonable person would have resigned). But plaintiff Cosme never returned to work after she left her employment on or about June or July 2006.

Plaintiff Cosme stated at her deposition that Mayor Hernandez would complain that he needed young people working for him and that he would not renew the plaintiff's contract for that reason. **Nonetheless, Cosme admitted in her deposition that said comments were made before her last contract [in fact] was renewed, that is, prior to February 15, 2006.**[15] (Emphasis ours). *See* Docket

---

14. Question: Did your doctor [tell] you a specific time that you return to work?

Answer: No.
. . .
Question: What I want to know id if you ever told the municipality an expected date to return to work.
Answer: No, . . . .
. . .
Question: Now, when, if at any time, did your doctor finally tell you that you could return to work?
Answer: No.
Question: Up to today, has she told you that you can work?
Answer: I have to see her on December 18th.
Question: But up to today, November of 2009, has she told you that you are able to return to work?

Answer: No, not yet.
*See* Docket No. 50–4, pages 6 and 8.

15. Question: OK. You said that, at some moment, when they were going to renew contracts.

Answer: It was my turn to renew in February. . . .
Question: Look at me.
Answer: . . . of 2007.
Question: Aha.
Answer: But since I was operated on, I was not able to go to renew it.
Question: There, but . . . OK. So, you could not go there to renew, but when was it that he told you this?
Answer: That was prior to renewing the contract?
Question: When?

No. 101–1, pages 37–39 and page 40, lines 1–19. Cosme's contract was renewed more than once before her voluntary resignation, as she started working with the Head Start Program managed by the Municipality on September 12, 2003. *See Complaint,* Docket No. 1. The last contract was renewed on February 15, 2006, effective March 1, 2006 to February 28, 2007. Hence, the renewal date of Cosme's last contract, which is February 15, 2016, is not temporarily proximate to the date when she left her employment on or about June/July 2006, nor to the date of December 18, 2006 when she resigned. There is simply no temporal proximity between the dates of the alleged harassment until the date of [her resignation] termination. *See Calero–Cerezo v. U.S. Department of Justice,* 355 F.3d 6, 25 (1st Cir.2004); *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 110 (1st Cir.1988).

As to the time between the action and plaintiff's resignation or alleged "termination," the First Circuit has clearly stated that being "discharge[d] soon after plaintiff engages in activity specifically protected by ... [discrimination statutes including Title VII, ADEA, and ADA] is indirect proof of a causal connection between the firing and the activity, because it is strongly suggestive of retaliation." *Calero–Cerezo,* 355 F.3d at 25 (quoting *Oliver v. Digital Equipment,* 846 F.2d 103, 110 (1st Cir. 1988)). But most critical is that "the temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" *Calero–Cerezo,* 355 F.3d at 25 (quoting *Clark County Sch. District v. Breeden,* 532 U.S. 268, 273–274, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).

Answer: We had to renew the contracts in February, and in January, when it was time for us to go back to work, that is when he said that he was going to have to get rid of elderly people.

Question: And you were there when he said that?

Answer: Yes, of course I was there. He was present there, looking at the contracts and everything.

Question: Ma'am, but in 2007, you did not have a contract.

...

Question: Was that in February 2007, that you were supposed to renew the contract?

Answer: Yes, because it was prior to 2007.

Question: And you're talking about January 2007 that he told ... that he said that while you were present.

Answer: 2006.

Question: Ah, OK. **So it was 2006 when your contract was going to be renewed?**

Answer: **Yes, because my contract was still in effect.** Yes, because that's from February through February. And it was in the interim where ... when I had still not signed the contract, that they hire someone else.

Question: So, I want to know when was it specifically that he said that. Was it in 2000 ... ? **We know already that it was in 2006. But it was prior to your signing your contract?**

Answer: **Yes, prior to.**

...

Question: So, and you said prior that he made those comments in January of 2006.

Answer: Yes, because when the year 2006 began, that is when he starts to change people, and to say: "You're going to be assigned to this one place," or "you're going somewhere else ..."

Question: OK. Fine. **And even though he was saying that, he renewed your contract.**

Answer: **Yes, renewed it, but he renewed it with reprisals.**

Question: What reprisals?

Answer: Because he told me this. And I'm going to give me any more work, and that's it.

Question: So, in March ... January of 2006, he says he doesn't want to renew old people's contract, yet he renews yours, and then, he told you that he was not going to give you work?

Answer: After we renewed the contracts, I was working in 2006.

The First Circuit has held that a "several month gap cannot alone ground an inference of a causal connection between a complaint and an alleged retaliatory action." *Ahern v. Shinseki,* 629 F.3d 49, 58 (1st Cir.2010). The Court is not persuaded by defendants' argument as to the discriminatory reasons proffered because they are simply not temporal in proximity to her resignation. Plaintiff Cosme alleges conduct by the Mayor which occurred before her resignation in December 2006, related to actions prior to June or July of 2006. Hence, five or six months elapsed, thus, a "several month gap" exists between the conduct and the action, that is, longer that the three of four months that has been rejected by the First Circuit as a temporal proximity and the action. *See Ahern v. Shinseki,* 629 F.3d at 58, and *Calero–Cerezo,* 355 F.3d at 25.

 Plaintiff Cosme further alleges that her supervisor and the director of personnel, as well as Mayor Hernandez, harassed and discriminated against her because of her age and health condition. Cosme further alleges that she was threatened and insulted by the defendants so that she would feel forced to resign. These facts, however, considered in a light most favorable to plaintiff, are still insufficient to show that the severeness and pervasiveness was such, that Cosme felt forced to resign. The only evidence submitted was plaintiff Cosme's own testimony as to the harassing comments that were made to her. As stated above, these comments are inadmissible hearsay testimony and self-serving statements that cannot be considered to prove the claim, as they are not temporal in proximity to the alleged termination and/or the alleged constructive discharge effective December 18, 2006, when indeed Cosme resigned voluntarily and for personal reasons related to her husband's health condition. *See Calero–Cerezo,* 355 F.3d at 25. The Court, however, is "not obliged to take at face value

[plaintiff's deposition] subjective beliefs when they are not factually based and merely constitute conclusory, self-serving statements." *Torrech–Hernandez v. General Electric Co.,* 519 F.3d 41, 48 (1st Cir.2008) (citing *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993) (material facts creating a factual dispute "must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth")).

 Furthermore, based upon plaintiffs' opposition to supplemental memorandum in support of summary judgment, Docket No. 101, the non-moving party was expecting the trial court to perform plaintiff's homework, as plaintiffs' have merely cited pages of Cosme's deposition in order to demonstrate the existence of this alleged forced resignation without any discussion or legal analysis. *See* Docket No. 101, and Docket No. 101–2, plaintiff Cosme's deposition, which consists of 148 pages. Failure to provide a well developed argument constitutes a waived argument. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990).

In plaintiffs' *Response in Opposition to Supplemental Memorandum in Support of Motion for Summary Judgment,* Docket No. 101, page 4, ¶ 9, plaintiffs refers to certain pages of the Cosme's testimony which allegedly shows the "threats, harassment, and force resignation" claimed by plaintiff. A review of the referenced pages, *i.e.,* 14–15, 17, 20, 22–24, 26–33, 38–41, 44–45, and 95104 of Exhibit II (Plaintiff Cosme's deposition), follows below.

It is important, however, to establish that Cosme's work contract with the Municipality would expire on February 28, 2007. Cosme had surgery on her foot on or about June/July of 2006, *see* pages 7–8, Docket No. 101–2. Cosme never returned to work after the surgery, page 9, Docket No. 101–2. Cosme alleges that she spoke

on the telephone with the Mayor regarding a sick leave, and the Mayor's aide told her that "he was going to give me [her] a leave for one year." *Id.* "And then, he told me: 'You can go home at ease, because I will call you to give your license, or your leave, and then, I will call you when you can come back to work.' And so, when two weeks went by, and I [Cosme] went back to the municipality, they had taken someone else in my job." *Id.* Cosme further claims that "the mayor's aide deceived me...." *Id.* It appears that Cosme spoke with the Mayor sometime in January 2007, and the Mayor asked her "[w]hat supervisor was insulting you?" *See* Docket No. 101–2, page 15. Cosme replied: "The one who insulted me is the one who died. Her name is Elsa Martínez." *Id.* When Cosme was asked whether her doctor had told her when she could return to work, Cosme answered "No." *See* Docket No. 101–2, page 17. Some excerpts of Cosme's deposition are included herein to show Cosme's inability to prove her claims under ADA and/or ADEA in addition to her inability to return to work, even still at the date of her deposition, which was taken on November 19, 2009, that is, on or about 17 months after her foot surgery, and eleven months after her resignation.

Question: What I want to know is if you ever told the municipality an expected date to return to work?

Answer: No, because I used to take the certificates. I used to take the certificates, but it was in that interim that they sent for me to give me the license, or the leave.

...

Question: In your record there is a document, dated October 13, 2006, and it's of SINOT, Seguro de Incapacidad no Ocupacional.... And it's signed by you ... And it states here that, from August 16, 2006, up to December 1, 2006, you were incapacitated.

Answer: Yes. I used to take the medical certificates to that office

....

Question: Ok, so during that period, you were covered under SINOT, is that correct?

Answer: By SINOT.... I've even got copies of the checks.[16]

...

Question: **But up to today, November of 2009, has she [the doctor] told you that you are able to return to work?**[17]

Answer: **No, not yet.**[18]

...

Question: Did you receive checks from SINOT after December 1st of 2006?

Answer: No, I receive my social security.

Sometime in January [2007], Cosme alleges that a supervisor [not identified], "not the boss ..." told her: "Leave. Your children are all grown up. Why do you want to keep working?" *See* Docket No. 101–2, page 15. But on the other hand, Cosme admits that Eva Cintron, a supervisor who was later allegedly fired, told her: "If you can't continue working, well then,

**16.** *See* Docket No. 101–2, pages 17–18. The record shows that plaintiff Cosme received SINOT's disability benefits for 26 weeks, as provided by 11 L.P.R.A. § 203(c).

**17.** The Court emphasizes the protection granted under local law known as SINOT, which runs only for a period of 26 weeks. In the instant case, almost three years had elapsed since plaintiff Cosme had surgery on her foot, on or about June 2006, triggered by a non-work related condition, and at the time of the taking of her deposition on November 19, 2009, Cosme was still unable to return to work. *See* Docket No. 101–2, page 20.

**18.** *See* Docket No. 101–2, page 20.

see what you can do, because I need some-one." *See* Docket No. 101–2, page 28.

Question: Ok. So, it was around January of 2007 the first time that you told the mayor about this?

Answer: Yes, . . . . .

. . .

Question: Ok. Prior to that date, what things had the mayor told you?

Answer: Well, what I told you before, that he was constantly threatening me regarding social security.[19] [But before Cosme went on leave for her spurs surgery on or about June/July 2006].

. . .

Question: Ok. So, those comments [he] made you about social security, he made prior to the surgery?

Answer: Yes. Prior to the surgery. . . . Because he's eliminating the elderly.[20]

. . .

Question: . . . And even though he [the mayor] was saying that, he renewed your contract.

Answer: Yes, renewed it, but he re-newed it with reprisals.

Question: What reprisals?

Answer: Because he told me this. And I'm going to say this. He told me— he said that he was not going to give me any more work, and that's it.[21]

. . .

Answer: Because he told me that he was no going to give me àny more work, nor my family. . . . He told me if my daughters (one is a teacher, another is a secretary, and another is

a nurse) went to ask for work, he was not going to give any of them a job.

. . .

Question: OK. None of them work at the municipality, then?

Answer: There's one that works with Head Start.

Question: What's her name?

Answer: Lillian Rodriguez. . . . She has been working there going on three years.

. . .

Question: So that means that the mayor has renewed her [Lillian Rodriguez] contract at least twice?

Answer: Yes, twice.[22]

When asked whether she knew the em-ployee hired to work at Pastillo, the place where Cosme used to work, plaintiff an-swered no. *See* Docket No. 101–2, page 45. Cosme further testified:

Question: Now, this person that substi-tutéd you, that is performing, or was performing your duties, do you know her?

Answer: No.

Question: Have you learned who this person is?

Answer: I don't know if she's from Jua-na Diaz, or Ponce, or anywhere.

Question: Have you—

Answer: I don't—

Question:—seen her?

Answer:—know. No.

Question: So, what do you now about her?

---

19. *See* Docket No. 101–2, page 29, referring to the fact that the defendant was receiving Social Security Benefits, but at the same time received the benefits under the employment contract with Head Start. This comment be-fore Cosme's surgery is stale under the law, as a temporal proximity discriminatory event under *Calero–Cerezo*, 355 F.3d at 25 and *Clark*

*County Sch. District*, 532 U.S. at 273–274, 121 S.Ct. 1508.

20. *See* Docket No. 101–2, pages 33–34.

21. *See* Docket No. 101–2, page 40.

22. *See* Docket No. 101–2, pages 41–43.

Answer: Nothing.

Question: Do you know her age?

Answer: My cousin told me that she's young.[23]

. . .

Question: OK. Now, do you know her age? More or less.

Answer: No, I don't.[24]

Question:—did anyone in the centers that you worked—Santa Isabel, Juana Diaz, and Coamo—did anyone harass you in those centers?

Answer: No.[25]

. . .

Question: Now, let me go back to the social security issue, because there's something I missed to ask. You said that, after you talked to—in the social security office, that you went and talked to the mayor, and told him he was wrong.

Answer: Well, of course.

Question: OK. And what was his reaction?

Answer: He [the Mayor] left me alone. I said: "What's that about social security?" So, I called social security, 'cause I have a cousin who's manager at social security in San Juan. So, I called her.[26]

When Cosme was asked again about her meetings with the Mayor, she was specifically asked whether she felt that the Mayor was insulting her, and Cosme consistently replied no. *See* Docket No. 101-2, pages 94–95. Moreover, when Cosme was further asked as to the claim filed with the EEOC, she again defended the Mayor's actions, and admitted that upon presentation of a medical certificate, the human resources office of **the Municipality granted her a sick leave under SINOT, prior to her surgery.** (Emphasis ours).

*See* Docket No. 101-2, pages 60–61. Cosme's testimony follows.

Question: OK. In the complaint that you filed with the EEOC, you mentioned that, in your visit in January of 2007 with the mayor, you told him that you wanted sick leave, but—and I quote—"it had been denied by the office of personnel."

Answer: The one who denied was the boss.

Question: What boss?

Answer: Eva Cintron. And she was fired.

Question: OK.

Answer: He himself fired her.

Question: So, when was it that Eva Cintron denied you the sick leave?

Answer: When I was operated, and the doctor sent me with the certificate. She told me: "Talk to your boss, so they can give you a certificate." And she didn't give it to me, and the mayor's aide didn't give it to me either.

Question: Let me go carefully here. You said that Eva Cintron denied you the sick leave when you had surgery, is that correct?

Answer: And she told me to see what I could do, because she needed another employee.

Question: But where [sic] given a sick leave—ah—? **Weren't you, in fact, given a sick leave, because you were receiving payment from SINOT?**

Answer: **Yes. But when I got sick, I wasn't operated yet, and I did not have SINOT. And since they denied me the leave, then human resources filled out the paperwork.**

Question: OK. So, Eva Cintron denied you the leave, but human resources

---

23. *See* Docket No. 101-2, pages 58–59.

24. *See* Docket No. 101-2, page 59.

25. *See* Docket No. 101-2, page 52.

26. *See* Docket No. 101-2, pages 48–49.

granted you that leave from SINOT, or with SINOT?

Answer: **Yes, when I brought the certificate.**[27]

(Emphasis ours).

In sum, there is nothing in the pages cited by plaintiff Cosme that shows that indeed there was a constructive discharge. On the contrary, as of November 2009, date when the deposition of Cosme was taken, the doctor that had operated on her foot back in 2006, had not discharged her. The Court notes that Cosme's contract expired on February 28, 2007.

In *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33, 35 (1st Cir.2001), wherein the defendant moved for summary judgment, the Court clearly stated:

This case is a lesson in summary judgment practice. As might be expected, the various motion papers, memoranda, exhibits, affidavits, and depositions of parties, witnesses, and experts produced an appendix of two thick volumes. In such a case, the filing of a motion for summary judgment signals a formidable search for a genuine issue of material fact. If this is not to impose the daunting burden of seeking a needle in a haystack, the court needs help from counsel. Almost two decades ago, we confessed our increasing "frustration [with] the more and more typical phenomenon ... of a district court having to decide a motion for summary judgment without the assistance the court should expect from counsel." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 927 (1st Cir.1983). We encouraged district courts to adopt

"anti-ferreting" rules, which warn parties opposing summary judgment that, to preclude judgment as a matter of law, they must identify factual issues buttressed by record citations. "[O]nce so warned," we added, "a party's failure to comply would, where appropriate, be grounds for judgment against that party." *Id.* at 931.

. . .

These disparities, however, do not create a jury question. We have refused to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit. *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4–5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."); *see also Torres v. E.I. DuPont De Nemours & Co.*, 219 F.3d 13, 20–21 (1st Cir.2000). We adhere to that practice now.

In *Cruz–Baez, et als. v. Negron–Irizarry*, 220 F.Supp.2d 77, 79, n. 3 (D.P.R.2002) (citing *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir. 1991)), wherein the defendant moved for dismissal, this court pellucidly indicated that the parties have an affirmative responsibility to put their best foot forward in an effort to present a legal theory that will support their claim. The Court finds that plaintiffs have disregarded this duty by failing to properly demonstrate to the Court the facts that support a constructive discharge claim.[28] In any case, the evi-

---

27. *See* Docket No. 101–2, pages 60–61.

28. *See also* Local Rule 56(c), (d), (e) for the United States District Court for the District of Puerto Rico: "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." **An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion.** The court may dis-

dence presented does not show such an intolerable environment that would force a reasonable person to resign. Defendants' motion for summary judgment as to the ADA and ADEA discrimination claims based upon a constructive discharge theory is granted.

### The Title VII Claim

Title VII of the Civil Rights Act of 1964 specifically protects against discrimination on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e–2(a). Discrimination based on age ("ADEA") and/or disability ("ADA") is regulated by different federal statutes which essentially function in the same way as Title VII, but nonetheless are separate. In the present case, plaintiff Cosme has claimed discrimination only on the basis of disability and age, which is why this Court concludes that the plaintiff has no claim under Title VII of the Civil Rights Act of 1964, nor under 42 U.S.C. § 1983. *See* Docket No. 50. The Court further notes that plaintiff Cosme was never terminated by the defendant Mayor Hernandez. The record clearly shows that, on December 18, 2006, Cosme resigned voluntarily due to the health condition of her husband. Indeed, Cosme resigned prior to the expiration of her employment contract which was due to expire on February 28, 2007. *See* Docket No. 50–3.

In view of the foregoing, the court hereby grants defendant's motion for summary judgment as to plaintiff's Title VII claim.

### The Section 1983 Claim v. The Statute of Limitations

In *Brauchitsch–Monedero v. Puerto Rico Electric Power Authority,* 786 F.Supp.2d 470, 483 (D.P.R.2011), the Court, citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), held:

> Section 1983 imposes civil liability upon any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. **For a Section 1983 claim, two allegations are required in order to state a cause of action. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."** *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). (Emphasis ours).

Plaintiff Cosme alleges that Mayor Hernandez and the Municipality's officials in this case, acting under the color of law, violated Cosme's civil rights under 42 U.S.C. § 1983. For easy reference, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in. an action at law, suit in equity, or other proper proceeding for redress . . .

---

regard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or considered on summary judgment. The court

shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts. (Emphasis ours).

However, the record shows that plaintiff Cosme's cause of action under Section 1983 is based upon alleged threats made by Mayor Hernandez regarding her current employment contract with the Municipality, and the fact that she was then also receiving Social Security benefits. Plaintiff alleges that Mayor Hernandez "told co-plaintiff Cosme that he would call Social Security to intervene with her, and put her in jail ..." and that "he mentioned this social security fraud to third parties," and this would be the last renewal of her contract. *See* Docket No. 73, ¶¶ 7, 8. Defendants, on the other hand, assert that this Section 1983 claim is time-barred, as the record shows that the alleged social security remarks were made prior to June/July 2006, that is, one year and four months prior to the filing of the instant complaint on October 5, 2007.[29]

Before analyzing the merits of this claim, the Court must determine whether the claim is not otherwise precluded as untimely by the applicable statute of limitations. "Section 1983 does not contain a statute of limitations period, therefore, a federal court must borrow the forum jurisdiction's limitation period." *Maldonado–González v. Puerto Rico Police*, 927 F.Supp.2d 1, 10 (D.P.R.2013) (citing *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir.2001)). "In the case of Puerto Rico, the pertinent period is one year." *Id.* (citing *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 21 (1st Cir.2008)). Accordingly, in *González v. U.S.*, 284 F.3d 281, 288 (1st Cir.2002), the Court held that the accrual date of a Section 1983 claim is when the plaintiff knows or should have known of the injury; what is the basis for his/her claim, and the person who caused it. On the other hand, the Court also

29. Regarding the subject of Social Security and the alleged threats of Mayor Hernandez, plaintiff Cosme testified during the taking of her deposition on November 19, 2009, Docket No. 101-2, pages 32–33, the following:

Question: Did you ... meet him [the Mayor] ... in a hallway, or at any place?
Answer: No. In the hallway was when I used to go, when I was fine, and I had not been operated.
Question: OK. So, those comments me [sic][he] made you about the social security, he made prior to your surgery?
Answer: **Yes. Prior to the surgery.**
Question: OK. What exactly did he tell you regarding the social security?
Answer: That I wanted them to give me work, and that what I was doing was a fraud of social security, and that he was either call social security, or go there personally to report me. And before he went, I went. And I spoke ... that one of the officers of social security, and ... and one of these ... one of the big people there, at social security, told me: "Why is he trying to" ... what's the word? ... instill fear in you?" And I went over there, and I told the social security people: "I came here, because the mayor is threatening me, that you are going

to put me in jail, because I'm receiving social security." And so then, the woman from social security told me ... she said I work and receive social security.
Question: OK. We have that clear. Did you ... ? That information, did you tell the mayor that information?
Answer: What? I told him. I told him: "you threatened me with social security, but social security told me that what they gave me was three hundred and something, which is just a miserable sum. So, what you want me is to quit work, so that you can hire someone else?" Because he's eliminating the elderly.
Question: Did he tell you that he was going to eliminate you because you were old?
Answer: Since that ... since one is elderly, they have to take people that are ... He discriminated ...
Question: Who said ...
Answer: ... against me
Question: ... that information?
Answer: The mayor.
Question: When ... ?
Answer: He was angry.
Question: When did he tell you that?
Answer: That was prior to my operation. He already had a persecution against me.
(Emphasis ours).

borrows Puerto Rico's tolling principles associated with statute of limitations. *Id.,* citing *Moran Vega,* 537 F.3d at 21. According to Puerto Rico law, the actions are tolled by instituting a claim before the courts, by a party's extrajudicial claim or by the party's acknowledgment of the claim. 31 L.P.R.A. § 5303. *See also Chardon v. Fernandez,* 454 U.S. 6, 7, 102 S.Ct. 28, 70 L.Ed.2d 6 (1982) (One year statute of limitations applicable to action brought under both the Civil Rights Act of 1964 and 1991). *See Acevedo–Perez v. United States,* 768 F.3d 51, 56 (1st Cir. 2014) ("In Puerto Rico, the applicable limitations period is one year," which Section 1983 borrows from local law to determine when the cause of action under federal law starts to accrue).

The Court initially determines that plaintiff's concern as to the Social Security discussions with the Mayor occurred, according to defendant in connection with Cosme's age discrimination claim pursuant to the Mayor's own words, as stated at the end of the quote stated above (before the date of the surgery on or about June/July 2006). *See* Docket No. 101–2, pages 32–33. The Court is also of the opinion that ADEA may preclude a Section 1983 civil rights complaint that is based on the facts of an ADEA claim. However, the Court accepts the suggestion of the First Circuit in the case of *Collazo–Rosado v. University of Puerto Rico,* 765 F.3d 86, 95 (1st Cir.2014) ("We have not yet decided how *Fitzgerald* [*v. Barnstable Sch. Comm.,* 504 F.3d 165, 178–179 (1st Cir.2007)] applies in a case like Collazo's. And today is not the day to do so. That is because even if we assume favorably to her that the ADA does not foreclose § 1983 relief in a post-*Fitzgerald* world (and we intimate no opinion on that score) ...."). Because the Court is of the opinion that Section 1983 is anyway time barred, the Court chooses not to determine at this time whether or not

ADEA coverage in employment precludes a Section 1983 claim.

■ As to the applicable statute of limitations under Section 1983, a filing with the EEOC is considered an extrajudicial claim and must meet three criteria in order to interrupt or toll the limitations period:

> The claim must be made by the holder of the substantive right (or his legal representative), [...] it must be addressed to the debtor or passive subject of the right, not to a third party, [...] and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit.

*See Moran Vega,* 537 F.3d at 21 (quoting *Rodríguez Narvaez v. Nazario,* 895 F.2d 38, 41–42 (1st Cir.1990)). In other words, the EEOC's filing must be identical to the eventual judicial complaint in order to interrupt the limitations period and preserve claimant's rights. *See Moran Vega v. Cruz Burgos,* 537 F.3d at 21 ("**Consequently, an administrative claim will toll the limitations period only if it puts forth an 'identical cause [ ] of action,'** *Benitez–Pons v. Puerto Rico,* 136 F.3d 54, 59 (1st Cir.1998) (quoting *Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 43 (1st Cir. 1990)")). (Emphasis ours).

A claim under the EEOC, therefore, does not constitute a claim under 42 U.S.C. § 1983. The claim under the EEOC, addresses only the cause of age discrimination in the employment, but certainly not a claim under 42 U.S.C. § 1983, as they are two different causes of action that are not intertwined. Moreover, a claim filed under ADA and/or ADEA do not toll the claim under 42 U.S.C. § 1983. Furthermore, the Supreme Court of Puerto Rico has stated clearly in *Cintron v. ELA,* 127 D.P.R. 582, 592 (1990); *Delgado Rodriguez v. Nazario de Ferrer,* 121 D.P.R. 347 (1988), and *Diaz de Diana v. AJAS Ins.*

*Co.*, 110 D.P.R. 471, 476 (1980), that the filing of the administrative complaint with the EEOC only tolled the one year period of the statute of limitations as to the employer, but not as to the natural persons sued in their individual capacities. *See generally Moran–Vega v. Cruz–Burgos,* 2006 WL 696090 (D.P.R. March 19, 2006), *affirmed* 537 F.3d 14 (1st Cir.2008).

Defendants contend that the facts that give rise to the Section 1983 claim happened at least a year and four months prior to filing of the complaint, therefore, the instant claim is time-barred and must be dismissed, as the EEOC tolling does not interrupt the Section 1983 claim.[30] *See Benitez–Pons v. Puerto Rico,* 136 F.3d at 59. Defendants correctly state that plaintiff Cosme herself admitted in her deposition, see Docket No. 50–4, that comments of social security fraud were made prior to the date of her surgery, that is, prior to June/July 2006, and prior to Cosme's voluntary resignation, and therefore a year and three months before the filing of the complaint. The instant complaint was filed on October 5, 2007. Because Cosme has not shown to the Court that when exhausting her claims for age under ADEA or disability under ADA did not indicate a prior or contemporary alleged fraud as to the Social Security benefits received by plaintiff Cosme, the time to file a 42 U.S.C. § 1983 claim has elapsed. The claims under ADA and ADEA have been properly interrupted but the claim under section 1983 has not been tolled, as a threat under Social Security benefits is for a claim under ADA and ADEA. Further, the EEOC cannot provide a remedy based on alleged violations to Social Security or that plaintiff was being threatened with violating Social Security law.

It is clear that Cosme was appraised of her cause of action before June 2006 by the Mayor and personnel from the Municipality about her contract with the Municipality and the potential conflict with the Social Security Administration, as plaintiff was receiving Social Security benefits in addition to her contract with the Municipality. *See* Docket No. 50–4, pages 7–12. Plaintiff Cosme stated in her deposition that, prior to her foot surgery [on or about June 2006], the Mayor told her "that he was either call social security, or go there personally to report [to] me." *See* Plaintiff Cosme's deposition, Docket No. 50–4, page 12. Hence, based upon Cosme's own testimony, the Court finds that the claim under section 1983 is clearly time barred.

Lastly, the Court notes and clarifies that the record is devoid of any evidence that Mayor Hernandez indeed reported plaintiff Cosme to the Social Security Administration, and most importantly, plaintiff was never deprived of compensation even when she was on authorized medical leave. *See* Statement Under Penalty of Perjury executed by defendant Ramon A. Hernandez Torres on December 7, 2009, Docket No. 50–5.

Even assuming *arguendo* that the claim under 42 U.S.C. § 1983 is not time barred, the claim must be denied on the following grounds:

1. In the instant case, Cosme was not terminated by the Mayor, as plaintiff resigned voluntarily on December 18, 2006 due to the health condition of her husband. The Court notes that Cosme's resignation was made prior to the expiration of her employment contract which was due to expire on February 28, 2007. *See*

---

**30.** Defendants correctly state that plaintiff Cosme herself admitted in her deposition, *see* Docket No. 50–4, that comments of social security fraud were made prior to the date of her surgery, that is, prior to June 2006, and therefore a year and four months before the filing of the complaint. The instant complaint was filed on October 5, 2007.

also *Fantini v. Salem State College,* 557 F.3d 22, 30–34 (1st Cir. 2009)("there is no individual liability under Title VII [or ADEA].") *See also Benoit v. Technical Manufacturing Corporation,* 331 F.3d 166 (1st Cir.2003).

2. There is no liability from the Municipality simply because plaintiff Cosme resigned voluntarily and prior to the expiration of her employment contract due to expire on February 28, 2007. As stated above, Cosme resigned due to her husband's health condition. Moreover, there is no cause of damages against the Municipality under 42 U.S.C. § 1983, as plaintiff failed to show any liability against the Municipality, such as, termination for age discrimination or failure to provide a reasonable accommodation. Based on the record, the Court notes that plaintiff Cosme never asked the Municipality through the Mayor to provide a reasonable accommodation. In sum, if plaintiff Cosme was never terminated nor requested a reasonable accommodation, and Cosme voluntarily resigned prior to the expiration of her contract, there is simply no liability or damages to be imposed on the Municipality.

3. The mere filing of an administrative claim with the EEOC "will not toll the running statute of limitations for tort actions nor violations of constitutional rights, provided that an administrative agency, such as the Puerto Rico Department of Labor, ... or the EEOC, does not possess jurisdiction over such matters." *See Moran–Vega v. Cruz–Burgos,* 2006 WL 696090, *4 (D.P.R. March 19, 2006), *affirmed, Moran Vega v. Cruz Burgos,* 537 F.3d 14 (1st Cir.2008); *see also Benitez–Pons v. Puerto Rico,* 136 F.3d at 59, and *Rodriguez Narvaez v. Nazario,* 895 F.2d at 43.

For the reasons set forth above, the Court finds that there is no triable cause of action under Section 1983. Hence, plaintiff Cosme's claim under section 1983 is dismissed with prejudice.

### *Conclusion*

In view of the foregoing: (a) the Defendant's Motion for Summary Judgment And Memorandum in Support, Docket No. 50, and Supplemental Memorandum in Support of Motion for Summary Judgment, Docket No. 100, is **granted;** (b) all federal claims under the ADA, ADEA, Section 1983, and discrimination under Title VII are dismissed with prejudice; and (c) all state law claims are dismissed without prejudice.

The Court has discretion to exercise supplemental jurisdiction in a case in which there is no cause of action under a federal statute. *See* 28 U.S.C. § 1367(a). The Court may dismiss the State actions without prejudice should the federal causes of action be dismissed prior to trial. *See Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1176 (1st Cir.1995).

The Court further finds that a military service stay in this case is no longer warranted, as plaintiffs' counsel is back from military service. The Clerk will lift the stay in the instant case.

Hence, the Court dismisses all federal claims, *i.e.,* ADA and ADEA, Title VII and 42 U.S.C. § 1983 with prejudice, and dismiss the state claims without prejudice. Judgment will be entered accordingly.

IT IS SO ORDERED.

